## BACKUS & SONS *v.* START and others.

(*Circuit Court, N. D. Ohio, W. D.* June Term, 1882.)

1. DAMAGES—NEGLIGENCE—BURDEN OF PROOF.

In an action for the recovery of money advanced for the purchase and storage of merchandise, where a counter-claim is interposed alleging carelessness and negligence on the part of the plaintiff in storing the property, and claiming damages as a set-off to the claim of the plaintiff, the burden of proof is on defendant to show negligence on the part of the plaintiff.

2. SAME—NEGLIGENCE DEFINED.

Negligence is a failure to do what a reasonably-prudent man would ordinarily do under the circumstances, or in doing what such person under existing circumstances would not have done.

3. SAME—WAREHOUSEMEN—DUTY AND OBLIGATION.

Warehousemen are not required to provide against an unprecedented emergency; but if they have reason to expect such an emergency, they are bound to take such precautionary measures to prevent loss as prudent and skillful men in the like business and under like circumstances might be expected to use.

4. SAME.

They are not bound to have or keep on hand special facilities to meet and overcome possible but unexpected and unprecedented emergencies, which are included in what is called the "act of God;" but if imminent danger presents itself, to use such appliances and means as the ordinary and safe conduct of their business requires them to possess, and such as are at hand, and to use them with such promptness as would be expected of ordinarily careful and prudent men in regard to their own, or property entrusted to their care under like circumstances.

*Bessel & Gorrill* and *Scribner, Hurd & Scribner*, for plaintiffs.

*John F. Kumbler* and *Kent, Hamilton & Gilcrest*, for defendants.

WELKER, D. J., (*charging jury.*) The plaintiffs, A. L. Backus & Sons, sue George H. Start & Co. to recover the sum of $3,312.93 balance due on account for money advanced to the defendants in the purchase of clover seed for them, with interest thereon; also for commissions on such purchase, and the storage of the seed in their warehouse in the city of Toledo, as set forth in an account attached to the petition, and also interest on such balance from the seventeenth day of June, 1881.

The defendants by way of counter-claim set up in their answers that the plaintiffs were warehousemen, and that during the years 1879 and 1880 had purchased for them as commission merchants a large quantity of clover seed, and prior to and on the twelfth day of February, 1881, had the same in store in their warehouse in the city of Toledo for the defendants for compensation for said storage, and that the plaintiffs were guilty of carelessness and negligence in the keeping and care of the seed, in that it was placed and kept on the lower floor of the warehouse, which was an unsafe and improper place to store it; that said floor was not more than six or seven feet above the Maumee river at its usual stage of water; that on the twelfth day of February, 1881, the water of the river arose and overflowed the said lower story of the warehouse, and wet the seed so as to damage it to a great extent, and by reason of which the defendants were greatly damaged; that for several days before the plaintiffs had knowledge, or ought to have known by diligent inquiry, that there was impending a great and extraordinary flood, and with that knowledge neglected to remove the seed to a place of safety, and by such gross negligence left the seed in such improper place to be overflowed and damaged by the flooding of the river; and that by this gross negligence the seed was damaged to the extent of $8,000, which they ask to recover from the plaintiffs. The plaintiffs deny the allegations of this answer.

The issue, then, for you to determine grows out of this counter-claim of the defendants. In the absence of the establishment of this defense, the plaintiffs are entitled to recover the amount of their account, with interest. The defendants have the burden upon them to establish this defense by a fair preponderance of the proof. They must show that the plaintiffs were guilty of the carelessness and negligence, or some material part thereof, as alleged. The plaintiffs are

not required under this issue to prove that they were **not** careless or negligent in the care of the seed.

All questions of fact are to be determined by you. But there **are** several questions of law involved in this case, necessary to be given you by the court, to enable you to properly determine the questions of fact. The defendants seek to recover in their counter-claim damages for the negligence of the plaintiffs, set out in their answer. Negligence is a failure to do what a reasonably-prudent man would ordinarily have done under the circumstances of the situation; or in doing what such person, under existing circumstances, would not have done. The essence of the fault may lie in *omission* or *commission*. Carelessness and negligence are relative terms. What might be negligence under some circumstances, may not be so under other circumstances. Reasonable and ordinary care must have reference to surrounding circumstances at the time demanding such care and attention. Circumstances may often demand a higher or lower degree of care and diligence. Negligence is a question of *law* and of *fact*. The matter of law involves the duty of the party; and the question of fact, what was done by the party. The court settles the former, and it is your duty to determine the latter.

The plaintiffs were warehousemen, and the defendants the owners of the clover seed in controversy, placed in the plaintiffs' warehouse for storage for hire. Certain liabilities and rights legally arise from this relation of the parties. As such warehousemen, the law required the plaintiffs to use and exercise ordinary care in regard to the seed in their custody—such care as a reasonably-prudent man would ordinarily, under the circumstances and in the same employment, exercise in regard to his own property, or property entrusted to his care. The plaintiffs were required to store the seed in a proper and suitable place in their warehouse, such as was usually adopted and provided by warehousemen, and in the manner usual in the warehouse business at the city of Toledo. The plaintiffs were not the insurers of the absolute safety under all circumstances of the property placed in their care. They were not liable for injury to the seed occasioned by the act of God or the public enemy, which could not be prevented by the exercise of ordinary care on their part. A sudden and extraordinary flood in the river is to be regarded by you as "an act of God."

The first question of fact for you to settle is, was the seed stored in the usual way in the warehouse by the plaintiffs before the flood? It is not, I understand, seriously claimed by the defendants that it

was not stored in the usual manner and place, but the carelessness insisted on is, that the plaintiffs did not properly provide for its security and safety against the danger from the flood then pending, and in time to save it from injury therefrom.

It becomes important, then, that you understand the duties and obligations of the plaintiffs with reference to the then-impending flood of the river. The plaintiffs were not required or bound to provide against an unprecedented emergency, such as a greater flood than was ever before known in that locality, unless they had reason to believe that such an emergency was about to arise. They were bound, if they had reason to expect such an emergency, to take such precautionary measures to prevent loss as prudent and skillful men in like business and under like circumstances might be expected to use. If they did this, they did all the law required. If they did less than this, it was negligence. The mere fact that it was apprehended that there would be a general break-up of the river, caused by rains, thaws, and high water, did not of itself give reasonable information that the flood would be extraordinary and unprecedented, and greater than had ever before occurred in the locality, unless the circumstances reasonably and clearly indicated that such would be the result.

In determining whether the plaintiffs had reasonable ground to expect an unprecedented flood, they were not required to possess or exercise greater foresight than prudent and skilled men generally engaged in similar business and under like circumstances. The reasonable ground for belief of an unprecedented flood must be determined by you from the circumstances surrounding the plaintiffs as they appeared then and before the flood. It must not be ascertained and judged of from subsequent events, and after the flood had come.

How did the circumstances appear before the damage occasioned by the flood? The plaintiffs were not bound to have or keep on hand special facilities to meet and overcome possible but unexpected and unprecedented emergencies, which are included in what is called the "act of God," but they were required, if imminent danger presented itself, to use such appliances and means as the ordinary and safe conduct of their business required them to possess, and such as are at hand, and to use them with promptness, such as would be expected of ordinarily careful and prudent men in regard to their own, or property entrusted to their care under like circumstances.

Now, what was reasonable information as to the coming of the flood, and the danger arising therefrom, are matters you are to deter-

mine from the evidence. It is your duty to consider all the circumstances disclosed in the evidence—the knowledge and information of the plaintiffs at the time; their means of knowledge; the evidence before them of sudden danger, or the absence of said evidence of sudden danger; what was said to them by owners of seed in their care, and others; what was the talk of the people of the city interested in the danger brought to their knowledge; what had occurred as to floods, and their extent in years before at general break-ups in the river,—these and all others in the proofs are to be carefully and duly considered, with a view to ascertain whether the plaintiffs had reasonable information as to the extent of the danger from an unprecedented flood, such as did come. The mere fact that some persons may have directed the removal of their seed in plaintiff's care, or that others did not do so, does not change the liability of the plaintiffs as to their general duty to the owners of property in their care, but may be considered, with other circumstances, as to the grounds of apprehension of extraordinary danger, indicating such danger, if such appear in the evidence.

If you find that the plaintiffs, or either member of the firm, read the articles in the newspapers admitted in evidence, at the time of their publication, then, to the extent of the information therein contained, you will regard them as if the contents had been told to them by any person at the time. If, however, the articles were not so read, or if it does not appear that they were so read, then you must not presume such reading by plaintiffs, and they are not to be held as having received such information. The plaintiffs were not required to notify the defendants that there was danger of injury to the seed by the flood. Such notice, or the failure of such notice, would not change the duty of the plaintiffs, or their liability as bailees of the defendants' seed. They were required to act upon the circumstances before them, in the care of the property, without reference to such notice to the defendants. If, after reasonable information of danger, the plaintiffs promptly commenced the removal of the seed from the first to the second floor, and did so as rapidly as reasonably could be done under the circumstances, and the flood came suddenly before all could be so removed, they would not be guilty of negligence as to that part not removed. The mere fact that the removal was commenced on the clover seed of the owners who had notified them to remove at the expense of such owners, to the second floor, does not necessarily make it negligence in the plaintiffs in not removing the defendants' seed before that of the other owners. Nor would such

removál justify the plaintiffs in neglecting the removal of the defendants' seed. As to their seed the plaintiffs were required to be held to the exercise of the care already stated. ·

If you find that the plaintiffs, under these general directions, were not guilty of negligence as claimed by the defendants, then, on the counter-claim, your verdict should be for the plaintiffs, and you will find the amount due them on their account, with interest to the first day of this term.

If you find the plaintiffs were guilty of negligence in taking care of the seed, as charged by the defendants, then you will assess damages in favor of the defendants to the extent of the loss sustained by them on the seed. This you will do by ascertaining the value of the seed at the time of the injury, and deduct therefrom what was realized by the sale of the wet seed, or any dry seed received by the defendants after the flood, and find the balance.

You will also find what amount is due the plaintiffs, and then deduct that amount from the finding for the defendants, and find a general verdict for the defendants for the difference in the amounts, if there be any such difference.