**GANSON WAREHOUSE, Inc.**

v.

**UNITED STATES.**

No. 360–54.

United States Court of Claims.

Oct. 8, 1958.

Nathan Silberberg, Washington, D. C., for plaintiff.

Frances L. Nunn, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

LITTLETON, Judge.

This is a suit to recover (1) $11,320.96 balance due plaintiff on a rubber storage contract entered into with the Government; (2) $15,911.02 as compensation for services rendered defendant over and above those specified by the contract, and (3) $2,184.63, representing demurrage paid by it on railroad cars due to their delivery to the warehouse in excess of plaintiff's handling capacity. Defendant concedes liability for this last item of claim. The Government defends its refusal to pay the balance due on the contract on the ground that through plaintiff's failure to properly store and care for the rubber in question it suffered damage in excess of the amount due. In addition, defendant has filed a counterclaim for $17,533.67 representing the alleged excess of rubber damage over the amount withheld under the contract. Only those facts absolutely necessary to a disposition of this case will be stated in this opinion since a detailed report involving the various claims has been submitted by a Trial Commissioner of this court and is expressly made a part hereof.

In October 1951, a warehouse located at 153 Ganson Street, Buffalo, New York, and owned by the Saperston Real Estate Company of that city, was offered to General Services Administration for the storage of merchandise. An inspection of the building was made by Government employees who reported that the building would be suitable for the storage of crude rubber if repairs were made to the floor, roof and metal roll-up doors. However, the offer was rejected by GSA because it had received information indicating that the State of New York had condemned the warehouse because of unsafe pilings.

In the spring of 1952 GSA was contacted by a Mr. George E. Weichmann, president of plaintiff corporation, who offered to store Government rubber at the Ganson Street warehouse, at certain stated prices.[1] Mr. Leonard M. Dulberg, who was responsible for obtaining warehouse space for the storage of crude rubber belonging to the United States, pointed out to Mr. Weichmann that prior inspection reports had indicated that numerous repairs would have to be made to the building before it would be acceptable for the storage of rubber. He

1. It does not appear in the record just how Mr. Weichmann and the Ganson Warehouse company came into possession of the warehouse.

also told Mr. Weichmann that the Government had been informed that the building had been condemned. Mr. Weichmann thereupon, in several communications with Mr. Dulberg, assured him that the necessary repairs had been or would be made and that the building was approved by the State of New York, for the purposes intended. In this latter connection, Mr. Weichmann submitted a letter which purported to show that the Division of Buildings, Department of Public Works, City of Buffalo, New York, had declared the building satisfactory for public merchandise storage. It was not shown at the trial that the signer of the letter was one vested with authority to rule on such matters for the state and city.

At the time the negotiations between plaintiff and defendant were taking place, the United States was the sole purchaser of all rubber imported into the United States and, as a result, was hard put to find storage space for its stockpiling. In this situation, and in view of past satisfactory dealings with Mr. Weichmann, and upon his assurances that the necessary repairs would be effectuated, the GSA accepted plaintiff's warehouse for the storage of crude rubber on May 7, 1952.

Under the terms of the contract entered into between the parties, plaintiff was to take certain steps to insure the protection of the rubber from water and other damage which might occur during storage. It has been found that some of these precautionary measures were not taken by the plaintiff and the contract requirement that all rubber be stored on pallets was disregarded. Apparently, however, the GSA did not require the use of pallets in all situations and verbally waived their use in this case notwithstanding a specific provision of the contract prohibiting oral waivers.

On August 14, 1952, after all of the rubber had been stored under the contract, the warehouse was inspected by Government inspectors and plaintiff was required to rearrange and reduce the size of the rubber piles. No mention was made about plaintiff's failure to store the rubber on pallets. Two other inspections were made by the GSA during the course of the rubber storage in question and in each instance the inspectors reported the poor condition of the building. After the last inspection it was reported that pallets had not been used and it was recommended that the rubber be sold as soon as possible since some water damage had occurred from the elements and the rubber was not deemed fit for stockpile storage. Because of the water damage, the defendant sold the rubber at discounts. These discounts were arrived at by negotiation between the Government and the purchasers without consultation with, or notice to, the plaintiff.

Plaintiff's first cause of action is for the recovery of the sum of $11,320.96 which represents the amount withheld by the defendant from balances admittedly due plaintiff for services rendered under the contract. Defendant claims the right to set off such sum on the ground that the rubber suffered water damage to this amount because of plaintiff's failure to exercise the care required by the contract. Defendant's counterclaim of $17,533.67 also involves a question of plaintiff's liability for further damage to the stored rubber due to the same alleged failure on the part of plaintiff to properly store and maintain the rubber.

■ In an action by a bailee against a bailor for services rendered under a bailment contract, the bailee must show that the services were performed and the bailed article returned. After such a showing, the bailee would be entitled to judgment absent facts pleaded and proved by the bailor that would preclude such recovery. In this case the bailor (defendant) has pleaded a right of set off and has counterclaimed for damage alleged to have occurred to the bailed rubber due to the bailee's (plaintiff) failure to exercise reasonable

care over the property.[2]  At this point the burden is on the bailor to establish the bailee's negligence and the resulting damage to the property.  Backus v. Start, C.C., 13 F. 69.  Likewise, the burden is upon the bailor to prove that the property in question was delivered to the bailee in good condition and returned otherwise.  We are of the opinion that the defendant has failed to sustain its burden in that it has not shown that the rubber was damaged due to the lack of due care on the part of the plaintiff and also it has not shown that the rubber was in good condition when it was placed in the Ganson Street warehouse.

We arrive at these conclusions not without a considerable measure of difficulty since the record presents conflicting statements and contradictions.  The warehouse in question was old and was located on a river in a climate of very high humidity.  A casual examination of the building readily disclosed that it was not and could not be rendered watertight.  The record also shows repeated efforts on the part of plaintiff to put the building in proper repair.  What part of any water damage sustained by the rubber while in storage at plaintiff's warehouse was due to the inherent nature of the building and its location, and what part was due to plaintiff's failure to exercise the required care in initiating and expediting repairs, cannot be determined.  We think that the failure to directly tie up the water damage with some fault or negligence on plaintiff's part is fatal to defendant's defense to plaintiff's first claim.  The obvious inference to be drawn from the record as a whole seems to be that the defendant got just about what it anticipated from the contract i. e., not very good storage facilities for its rubber, and therefore should be liable for the balance remaining due and unpaid.  The period covered by the contract was one in which the Government was the sole importer of crude rubber and it was obviously pressed for the necessary storage space.  Under such circumstances it would be only normal for it to take whatever accommodations were available notwithstanding their unsuitability under normal conditions.  By this we do not mean to imply that a contractor may, in a period of emergency, take unfair advantage of the Government and thereby reap unjustified profits.  But where the Government has contracted with its eyes open for something less than perfect, it should not be heard to complain when the time to pay the bill has arrived.  Plaintiff is therefore entitled to recover of and from the United States the sum of $11,-320.96 on its first cause of action.

Plaintiff's second cause of action to recover $2,184.63 representing demurrage paid by it on railroad cars due to their delivery to the warehouse in excess of plaintiff's handling capacity, is uncontested and judgment for that amount will be entered in favor of the plaintiff.

■ The third cause of action represents the excess of the cost to plaintiff of labor employed in outloading the rubber over the cost of inloading.  Under normal circumstances the cost of outloading should be the same as inloading, but as our Trial Commissioner has found, plaintiff's operation in this respect was not normal.  Plaintiff has failed to sustain its burden of proof that the excess costs were the fault of the defendant.  If anything, the record shows that the excess cost of outloading was entirely due to plaintiff's method of inloading.  Plaintiff's third cause of action is therefore dismissed.

Defendant's counterclaim is in all respects merely a restatement of its defense to the plaintiff's first cause of action.  Since defendant failed to prove the condition of the rubber prior to storage or that the water damage to its rubber was caused by the fault or negligence of the plaintiff, its counterclaim must be dismissed.

2.  Article 10 of the contract states that the contractor will be liable for any loss caused by "failure to exercise such care in regard to said material as a reasonable careful owner of similar materials would exercise."  This is little more than a restatement of the law with respect to the care required of a bailee.

Judgment will be entered for the plaintiff in the amount of $13,505.59 and the counterclaim of defendant is dismissed.

It is so ordered.

HOLTZOFF, Judge, sitting by designation.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.