[No. 4825.]

THE ELKTON CONSOLIDATED MINING & MILLING COMPANY v. SULLIVAN ET AL.

1.  Master and Servant—Mines and Mining—Injuries to Miner—
        Operation of Cage—Evidence.

   In an action for the death of an employee caused by the wrecking of the cage on which decedent was being elevated, evidence reviewed and held insufficient to authorize a finding based on negligent construction.—P. 247.

**2. Same—Presumption of Negligence.**

The fact that an employee was killed while in the discharge of his duties in defendant's mine does not raise the presumption that such death resulted from defendant's negligence.—P. 248.

**3. Same—Presumptions.**

In an action for death of a miner by the wrecking of the cage, it was alleged that the wreck was the result of a defect in the guides at the floor of the 200-foot level, but the fall of a drill, which decedent was carrying and which caused the wreck, occurred before such level was reached. Held, that it could not be presumed in the absence of evidence to that effect, that the cage, which weighed over a ton, continued to rise from its own momentum after the power had been shut off, and then dropped back, since a fact will not be presumed, which there is no evidence to establish, nor can mere conjecture be resorted to in order to supply direct or inferential proof.—P. 249.

**4. Practice in Civil Actions—Negligence—Pleading—Issues and Proof.**

In an action for negligence, the plaintiff must be confined to the acts of negligence alleged and the results thereof causing the injury, as set forth in the complaint.—P. 250.

**5. Master and Servant—Mines and Mining—Defective Appliances—Injury to Miners.**

Where the engineer operating a mine cage was instantly warned by the shock from the wrecking of the cage, at the time decedent was killed, and stopped the cage as soon as it was possible, defendant's failure to keep an electric signal by which the cager could communicate with the engineer in operation was not contributory to the injury.—P. 250.

**6. Same.**

Failure of an employer to exercise reasonable care to provide reasonably safe appliances to guard against injury to his employee, is not actionable unless it appears that such failure was the cause of an injury.—P. 251.

**7. Same—Assumed Risk.**

Decedent, who was 21 years of age, had been employed in defendant's mine for nearly two years, his principal duty being to collect and carry steel on the cage from the workings of the mine to the surface. The company maintained a conspicuously posted rule forbidding men to carry steel loose in their arms on the cage, and requiring that all mining tools be placed in cars or lashed on the cage, a rope being placed in the cage for that purpose; and the danger of carrying steel in the cage unless secured was obvious to any person of reasonable intelligence.

Decedent boarded the cage with several drills loose in his arms, and as the cage was moving upwards one of the drills fell and caught in the plates or timbers of the shaft, whereby decedent was thrown against the wall, crushed by the cage, and fell to the bottom of the shaft.  Held, that decedent assumed the risk incident to so carrying such steel.—P. 252.

8.  **Master and Servant—Assumption of Risk by Servant.**

An employee assumes the ordinary risks and dangers incident to the employment upon which he enters, and in which he continues, which are known to him, or which he might have ascertained as a person of ordinary prudence in his situation, by the exercise of ordinary care upon his part.—P. 252.

9.  **Same—Mines and Mining—Injury to Employee—Co-employee Failing to Warn.**

Where decedent, a· person of 21 years, knew or could have known of a rule in defendant's mine prohibiting the carrying of steel unlashed while being transported, and where the danger in connection therewith was obvious, defendant was not liable because the cager, who had no control over decedent and did not attempt to exercise any, failed to warn him that such method of carrying steel was dangerous.—P. 252.

*Appeal from the District Court of Teller County.*
*Hon. William P. Seeds, Judge.*

Action by W. W. Sullivan and Harriet Sullivan against The Elkton Consolidated Mining and Milling Company. From a judgment for plaintiffs, defendant appeals.  ·  *Reversed and remanded.*

Messrs. DINES, WHITTED & DINES, and Mr. J. E. RINKER, for appellant.

Mr. E. C. STIMSON and Mr. TULLY SCOTT, for appellees.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellees, plaintiffs below, brought suit against the appellant, as defendant, to recover damages for the death of their son, alleged to have been caused by the negligence of defendant. The deceased was

in the employ of defendant, and had been for nearly two years, part of the time as a trammer under ground, and on the surface, and for about one-third of that period part of his duties had been to gather up drills, or steel, in the several levels of the mine, and assist in bringing the same to the surface, to be sharpened.   For a considerable period prior to the day of his death, one of his duties had been to bring up steel of the character mentioned, some of the witnesses stating that he had been so employed for five days, and others, for about a month prior to his death.   In performing these duties he rode on a cage operated through the shaft on the property of the defendant.   This shaft was divided into three compartments, separated from each other by timbers. In two of these compartments cages were maintained, the one in the middle compartment being the larger. This cage consisted of two decks, seven feet apart. There was no inclosure or railing around it, except the braces and uprights holding it together, so that, practically, each deck was an uninclosed platform. Running up and down each side of the compartment in which this cage worked were guides, along which shoes attached to the cage ran, the top of the shoes being about six feet above the floor of the upper deck.

On the day of his injury deceased entered the upper deck of this cage on the fourth level, with several drills which he held in his arms.   One of these pieces of steel fell and caught in the plates or timbers of the shaft in which the cage was operated, whereby he was thrown against the wall of the shaft, crushed by the cage, and fell to the bottom.   The injuries thus received caused his death.

The negligence upon which plaintiffs relied to establish their cause of action, as stated in their complaint, was substantially as follows:

(1) The horizontal plates in the shaft in which the cage was operated were next to the cage and wholly uncovered, so that anything protruding from the cage, while ascending, could catch under and against these plates.

(2) That the partition between the two compartments in which the cages were operated was similarly constructed.

(3) As stated in the complaint: "At a point about midway between the fourth level of said mine and the surface thereof, there was, on said day, a rough jog, bend, or misplaced joint, in the guides of said cage and shaft, which caused a jar or jerk to said cage, in passing over said jog, bend or joint."

(4) That about thirty days prior to the day when deceased was injured, the defendant negligently disconnected the electric bell apparatus, then in operation on the cage, and by means of which the cager, when this appliance was in order, could instantly signal the engineer, and instantly cause the cage to stop when ascending, and thereafter negligently caused the cager to use a rope signal, which was insufficient with which to signal the engineer, and which it was difficult, and next to impossible, for the cager to reach when the cage was ascending.

(5) That long prior to the date when deceased was killed, the defendant had failed and neglected to promulgate and enforce rules providing for ordinary care and safety in the handling of steel and drills on the cage, but, on the contrary, through its officers, had for a long time prior consented, permitted and directed that drills or steel might be carried upon the cage unlashed.

The complaint then recites that the deceased, while attending to his duties as a trammer, was directed to gather up drills in the several levels of the mine, and assist in bringing them to the surface,

and in performing this service, entered the cage at the fourth level, with several drills or pieces of steel which he held in his arms, as directed by appellant; "that thereupon the said cager directed said cage to be hoisted to the surface of said mine, and that at or about the said jog, bend or misplaced joint, the said cage was shaken or jarred, and which, as these plaintiffs are informed and believe, thereby caused a piece of steel to slip from the grasp of Sullivan, and catch in or against one of said exposed horizontal plates or timbers, of said defective shaft," whereby, in connection with the other acts of negligence charged, the deceased was thrown and caught between the shaft timbers and the cage, and killed.

The answer admitted that deceased was in the employ of defendant; that he entered the cage with several pieces of steel unlashed; that while he was ascending in the cage he was killed; that the horizontal plates to which the timber lining the shaft was fastened were inside, and next to the cage; that there were maintained between the compartments of the shaft horizontal timbers set about five feet apart; and that the electric bell apparatus was disconnected, and a rope signal substituted therefor. All other allegations in the complaint were denied, and defendants alleged contributory negligence and assumption of risk on the part of the deceased.

At the close of the evidence for plaintiffs, and again after all the evidence was in, the defendant moved the court to direct a verdict for the defendant, both of which motions were overruled. The jury returned a verdict for plaintiffs, upon which judgment was rendered. From this judgment the defendant appeals. Errors are assigned on the rulings of the court denying the motions for a directed verdict, and also on the reception and rejection of testimony, and on instructions given and refused.

The first act of negligence charged related to the manner of lining the shaft in which the cage in question was operated. Counsel for defendant contend that there is not a scintilla of evidence showing, or in the remotest degree tending to show, that the shaft was negligently lined, and challenged counsel for plaintiffs to point out anything in the record that contradicts this statement. In their brief counsel for plaintiffs fail to notice this contention, and we must, therefore, assume that the claim of counsel for defendant is correct.

The next allegation of negligence relates to the failure to provide a suitable partition between the compartments of the shaft. Evidently there was no evidence to support this allegation, for it was withdrawn from the consideration of the jury by an instruction to that effect.

The important question presented for determination is the one with respect to the jog in the guides along which the shoes attached to the cage ran, because, it is contended by counsel for plaintiffs, it was the jar of the cage, caused by this jog, which threw the steel from the grasp of deceased. That there was a jog in the guides we think is clearly established from the testimony, or, at least, there was sufficient on that subject to justify submitting that question to the jury, provided it appears that it so jarred the cage in its ascent that it could be said such jar caused the steel to fall from the arms of the deceased. Its location, therefore, is important. Several witnesses testified that it was located somewhere between the four-hundred and the one-hundred-foot levels; others that it was between the three-hundred and the one-hundred-foot levels. It will be observed that it was alleged in the complaint that it was located about midway between the fourth level of the mine and the surface thereof. This would place it, approximately,

at the two-hundred-foot level. The only witnesses who located it definitely say it was right at the floor of that level. From this résumé of the testimony bearing on the subject, we think it appears beyond dispute that the jog mentioned in the complaint was located at the floor of the two-hundred-foot level.

The next important question is the point in the shaft where the wreck of the cage occurred. It appears from the testimony, without dispute, that the steel which fell from the arms of deceased and wrecked the cage, or threw him against the walls of the shaft so that he was crushed and fell to the bottom, caught in the timbers of the shaft between twenty and thirty feet below the floor of the two-hundred-foot level. This is established by witnesses who testified that shortly after the wreck they examined the timbers and found marks thereon made by the steel at about that point in the shaft. The cager, who was on the same platform with deceased, says that immediately after the steel fell, it caught in the timbers, and that at the time it fell the cage was not jarred or jerked, but was running smoothly. It also appears from the testimony that the cage was stopped with the deck upon which the cager and deceased stood about one foot above the floor of the two-hundred-foot level. The shoes attached to the cage which ran in the guides were about six feet above the floor of the upper deck. Clearly, then, this jog could not have caused the casualty, because of the fact that the steel fell from the grasp of deceased when the cage, in its ascent, was so far below it that it could not have occasioned any jar of the cage. It appears, then, that the acts of negligence charged in the complaint, so far considered, were not proved; consequently, no cause of action based thereon was established.

The mere fact that deceased was killed while in

the discharge of his duties does not raise the presumption that the negligence of his employer was the cause of his death. In other words, where the evidence leaves the cause of an injury unproved, it cannot be attributed to defendant's negligence or fault. —*Borden v. Del., L. & W. R. Co.*, 131 N. Y. 671; *Sauer v. Union Oil Co.*, 9 Southern (La.) 566; *Sorensen, Admr., v. The Menasha Paper & Pulp Co.*, 56 Wis. 338; *Wintuska's Admr. v. L. & M. R. Co.*, 20 S. W. (Ky.) 819.

It is suggested by counsel for plaintiffs that the location of the cage in the shaft at the two-hundred-foot level may be accounted for by the fact that it dropped back after being stopped by the engineer. The cage weighed something over a ton, and there is no proof that its momentum was so great at the time of the casualty that after the power by which it was being raised was shut off, the mechanism by which it was hoisted was such that it would continue to ascend for a distance and then drop back. A fact will not be presumed which there is no testimony to establish. Mere conjecture cannot be resorted to, to supply the place of either direct or inferential proof.

It is also argued by counsel for plaintiffs that because witnesses testified they noticed that the cage was jarred in ascending or descending somewhere between the four-hundred-foot level and the surface, that, therefore, it might be inferred that the jog which we have said the testimony establishes was located at the two-hundred-foot level may have caused the cage to jar above or below that point. There are two reasons why this contention is not tenable: (1) The jog referred to was caused by the timbers to which the guide plates were attached slipping at or near the floor of the two-hundred-foot level. This displacement did not affect the cage guides either above or below the jog. Then, again, the testimony is un-

disputed that at the time the steel fell from the arms of deceased, the cage was running smoothly: (2) The effect of the jog, as alleged in the complaint, was to cause a jar or jerk of the cage in passing over the jog, and not to cause it to jar or jerk at any other point.

In an action for negligence, the plaintiff must be confined to the acts of negligence alleged, and the results thereof, whereby injury was caused, as stated in his complaint.

It appears that the defendant had installed an electric bell with appliances whereby the engineer could be signalled by the cager when upon the cage; that in addition, there was a bell which could be operated by the cager when the cage was in motion, by means of a rope suspended in the shaft. It appears that a signal to the engineer could be given more quickly by means of the electric apparatus than the rope. It was not in working order on the day the deceased was injured, and for this reason it is urged that the defendant was guilty of negligence. We do not deem it necessary to enter into a discussion of the question of whether or not, in a proper case, the defendant might be regarded as guilty of negligence in not having the electric bell in condition for the cager to signal the engineer, because, whatever might be the conclusion on that point, it is immaterial in the present case. It is manifest that the inability of the cager to signal the engineer by means of the electric bell did not, in the slightest degree, contribute to the injury of the deceased. According to the undisputed testimony, the steel which fell from his arms immediately caught in the lining of the shaft, and that the shock thus caused instantly communicated to the engineer the information that something was wrong, who thereupon stopped the cage as soon as it was possible for him to do so. So that he was in-

formed by the shock caused from the steel catching
in the timbers, that the cage should be stopped just
as quickly as though that information had been con-
veyed by means of an electric signal, and acted ac-
cordingly.

Failure of an employer to exercise reasonable
care to provide reasonably safe appliances to guard
against injury to his employees is not actionable un-
less it appears that such failure was the cause of an
injury.

For some time prior to the date deceased was
killed, the defendant had promulgated a rule with
respect to carrying steel in the cage. This rule was
as follows: "All mining tools must be in cars or
lashed on the cage. Men must not carry them loose
in their arms." The negligence upon which plain-
tiffs rely with respect to this matter is, that the com-
pany failed to enforce the rule. There is a conflict
in the testimony as to the extent this rule was en-
forced, it being the contention of counsel for plain-
tiffs that it had been abrogated, while on behalf of
defendant counsel contend that it had not. It does
appear that for a time after the rule was first posted
it was implicitly obeyed. We do not think it is neces-
sary, however, to enter upon a discussion of what the
evidence may disclose with respect to the enforce-
ment of the rule, because that question cannot affect
the rights of either of the parties to this action.
Neither shall we undertake to determine whether the
failure of deceased to observe the rule was contribu-
tory negligence, as contended by counsel for defend-
ant. The rule with respect to the manner in which
tools should be carried in the cage was posted so con-
spicuously that employees could not fail to have
noticed it. This, of itself, was a warning to them that
to carry steel in the cage other than in the manner
designated by the rule was dangerous. A rope for

the purpose of lashing it had been provided by the defendant, and placed in the cage, and was there at the time the deceased entered the cage with the steel in his arms. The danger of carrying steel in the cage, except it was secured, was obvious to any person of reasonable intelligence. It was apparent that if steel being carried in the cage caught in the lining or timbers of the shaft, the result would be to wreck the cage, and probably injure its occupants. The deceased was a young man, twenty-one years of age. He had been employed in the mine of defendant, as we have stated, nearly two years, and for a considerable period prior to his injury, his duties were to collect and carry steel on the cage from the workings of the mine to the surface. An employee assumes the ordinary risks and dangers incident to the employment upon which he enters, and in which he continues, which are known to him, or which he might have ascertained as a person of ordinary prudence in his situation, by the exercise of ordinary care upon his part.—*Denver Tramway Co. v. Nesbitt,* 22 Colo. 408; *Iowa G. M. Co. v. Diefenthaler,* 32 Colo. 391; *St. L. Cordage Co. v. Miller,* 126 Fed. 595.

It is urged by counsel for plaintiffs that the manner in which deceased carried the steel should not excuse the defendant company, because the cager was a vice-principal, and it was his duty to warn the deceased that this particular method of carrying the steel was dangerous, or was not a proper method to carry it, and that it was also his duty to see that the rule requiring steel to be lashed to the cage was enforced. This contention is without merit. From the record before us, it must be presumed that deceased was aware of the danger of carrying the steel unlashed. It is apparent from the record that the cager had no control over the deceased, nor did

he attempt to exercise any. Neither does it appear that he had any authority to control his acts.

It is not necessary to determine the other errors assigned by counsel for the defendant, because it appears from the record that the death of plaintiffs' son was not caused by negligence of the defendant. For this reason the judgment of the district court must be reversed, and the cause remanded for a new trial, and it is so ordered, with leave to plaintiffs to amend their complaint, if so advised.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concur.