[No. 8310.]

BENEDICT WAREHOUSE & TRANSFER COMPANY v. McKANNON PIANO COMPANY.

1. WAREHOUSEMAN—*Liability.* Warehousemen are not insurers of the goods committed to their care. They are bound only to common care and diligence. (184.)

2. NEGLIGENCE—*Reasonable Care*—*When for Court or Jury.* When there is substantial evidence upon the issue the question of reasonable care is for the jury, in view of all the surrounding circumstances. (184.)

In the absence of such evidence the question is for the court. (184.)

Action against a warehouseman for injury to plaintiff's goods stored in the basement of defendant's warehouse, the injury being occasioned by flood water from a neighboring stream. No damage by flood waters, in that vicinity, had occurred during thirty years. For the twenty years during which the warehouse had been used for that purpose no water had ever invaded the basement. *Held,* that fears of defendant's manager that injury might ensue, by reason of the presence of a certain embankment, in case a flood should occur in the stream, was not sufficient to submit the case to the jury. (184-186.)

*Error to Denver District Court.* Hon. JAMES H. TELLER, Judge.

Messrs GILLETT & CLARK, for plaintiff in error.

Mr. CHARLES K. PHILLIPPS, for defendant in error.

Chief Justice GABBERT delivered the opinion of the court.

In July, 1912, the Benedict Warehouse and Transfer Company was engaged in the business of receiving and storing goods for hire in the city of Denver. Prior to the 14th day of that month the McKannon Piano Com-

pany had stored with the warehouse company a number of pianos, which on that date were badly damaged by being flooded with water. The piano company brought suit against the warehouse company to recover their value. The trial of the cause resulted in a verdict for plaintiff, upon which judgment was rendered. The defendant brings the case here for review on error.

On motion of defendant certain portions of the original complaint were stricken. The plaintiff then filed an amended complaint, which the defendant moved to strike, upon the ground that it was a departure from the cause originally pleaded. This motion was overruled. The defendant then answered, putting in issue the value of the pianos, and the extent they were damaged, and by a further defense alleged that they were damaged by causes over which it had no control, and for which it was not responsible; and that in storing the pianos it exercised such case as a reasonable, careful owner of similar articles would exercise. This defense was put in issue by replication. Counsel for defendant assign as errors that the amended complaint does not state a cause of action; the exclusion of testimony; that by an instruction given the burden was placed upon the defendant to acquit itself of negligence, and that the evidence fails to make a case against the defendant.

By section 21, chapter 226, Laws 1911, (sec. 7783, Mills' St. 1912), relating to warehousemen, their liability is fixed as follows:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonable, careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

The cause was tried upon the issue of whether the defendant exercised the care imposed by law, and if the testimony establishes that defendant was not guilty of negligence then it is not liable for the damage to the pianos, and we shall first consider that question, which, if determined in favor of the defendant, renders it unnecessary to consider the other errors assigned. The warehouse of defendant is a brick structure, erected in 1891, near the Twentieth street viaduct in the city of Denver, and has been continuously used as a public warehouse for twenty years prior to the date the pianos in question were damaged. It has a basement in which these pianos were stored. The evening of July 14, 1912, this basement was filled by flood waters which practically destroyed the pianos. The part of the city in which the Benedict Warehouse is located is particularly adapted for warehouse purposes, by reason of trackage facilities. In the immediate vicinity a half dozen or more private warehouses of leading business concerns are located, and have been used for storage purposes from twenty to thirty years. Some of these have basements in which for many years articles that would be injured by water were stored. For many years, and with the knowledge and consent of the owners, goods of a perishable nature have been stored in the basement of the Benedict Warehouse. At one time a leading dry goods establishment leased two basement compartments of the warehouse, and used them for storing dry goods. At no time since the Benedict Warehouse was erected have goods been injured from water in the basement, nor at any time had water ever entered through the basement windows. During the entire period the locality has been occupied by warehouses, which range from twenty to thirty years prior to July, 1912, it appears that no flood had ever occurred in the vicinity of the Benedict warehouse. In fact, it does not appear that in the entire history of the city of

Denver any flood had occurred in that locality. On the afternoon of July 14, 1912, an unusually heavy rainstorm occurred in Denver. According to the weather bureau this rain broke all records for the heaviest fall of rain within short periods. Mr. Benedict, the manager of the warehouse company, visited the warehouse in the evening shortly after the rain ceased. He found nothing wrong. There were only the usual puddles and shallow pools of water in the vicinity which follow a heavy rain. In the early evening word was received in Denver that Cherry Creek was "on a boom." The fire and police departments at once took steps to notify residents of the lowlands along the Platte bottom of the flood that was coming down Cherry Creek. This stream flows into the Platte a half mile or more above the point where the Benedict Warehouse is located. It was not anticipated that danger would result from the flood of the creek, except that the water coming down that stream would cause an unusual rise in the Platte. Mr. Benedict, who was at home, received word from the watchman at the warehouse about 8:15 p. m., that the fire department had been warning everybody of possible danger. He at once telephoned his foreman, and started for the warehouse. He was detained because the flood was so high at the 7th avenue bridge that the street car he was in was not permitted to cross. He and his foreman arrived in the near vicinity of the warehouse in an automobile about nine o'clock. At this time the water around the warehouse was so deep they had to leave the machine and wade to the building. They at once undertook to remove the pianos from the basement, but within fifteen minutes after they reached the warehouse the water was so deep in the basement they were compelled to abandon their efforts. It appears from the evidence that this water came from an overflow of Cherry Creek, which occurred at some distance from its mouth, and flowed down by the

Union Station, the first floor of which was flooded to the depth of a foot or more. Between the river and the warehouse was a railroad embankment, which had been constructed about 1881. It was several hundred feet from the warehouse. This embankment obstructed the flow of the flood water to the river, caused it to back up and accumulate, so that it flowed through the basement winlows.

This flood had no connection with the rain in the afternoon, but was caused by a cloud burst which occurred in the upper basin of Cherry Creek, many miles above the city of Denver. From the foregoing facts established by testimony which is undisputed, the question to determine is, whether the defendant was guilty of negligence, or more nearly, in the language of the statute, fixing the liability of warehousemen, did the defendant fail to exercise that degree of care in storing the pianos that a reasonable careful owner of similar articles would exercise. It is well settled that warehousemen are not like common carriers, insurers of goods committed to their care, and liable for all losses not occasioned by the act of God or the public enemy, but are ordinary bailees for hire, and as such bound only to common care and diligence, and liable only for want of such diligence and care. Note to *American Brewing Association v. Talbot,* 64 Am. St. Rep. 538. What constitutes reasonable diligence and care is a question to be determined by the jury, in view of the surrounding circumstances, where there is substantial evidence upon which to submit such an issue, but in the absence of such evidence it becomes a question of law to be determined by the court. This brings us to the proposition of whether the defendant by the exercise of reasonable care and diligence should have anticipated that a flood might occur which would fill the basement of its warehouse. It does not appear that any floods had ever occurred in that locality. For twenty

years covering the period dating from the erection of the warehouse down to the time of the flood, water had not entered the basement from any source. It affirmatively appears that for a period of thirty years no damage had been caused by flood waters. In such circumstances the defendant cannot be held responsible for not anticipating a flood, unless we require such knowledge of events before they take place which no human being can either claim to possess or be held responsible for not acting upon. In cases not governed by special or more stringent rules than the one at bar, the law is that mischief from a cause which the exercise of reasonable care could not have been foreseen and anticipated, cannot be made the basis upon which to predicate negligence. *American Brewing Association v. Talbot, supra,* (141 Mo. 674, 42 S. W. 679); *Backus v. Start,* (C. C.), 13 Fed. 69; Ray on Negligence of Imposed Duties, 133.

The only evidence tending to show any apprehension of danger upon the part of defendant is the testimony of the manager of the piano company, and another witness, who testified that about ten days after the flood, they had a conversation with the manager (Benedict) of the warehouse company, when he took them to the railroad embankment previously mentioned, and said: "Here is where there should have been a culvert. I have been after the Burlington Railroad for three years to put a culvert in here, and I have been expecting and have known that if we ever had any heavy rains we would be flooded here—it would back up against this dike and flood us." From this testimony the inquiry is whether it had a tendency to show that defendant by the exercise of reasonable care, should have apprehended that the embankment would cause flood waters to fill the basement of the warehouse by preventing them reaching the river, or, in other words, does it tend to prove that defendant was negligent in storing the pianos in the basement of

its warehouse, located in such proximity to the embankment that it would impound flood water and thus cause the basement to be filled. Unquestionably if it had not been for the embankment, the basement would not have been flooded, but it was not a menace or source of danger, except in case of a flood which would thereby be intercepted, and so whether defendant was negligent turns, not upon the question of apprehension of what would occur in the event of a flood in connection with the embankment, but whether a flood should have been anticipated. It is not by inquiring into the apprehensions and fears of the manager of the warehouse company as to what might happen in case of a flood in the absence of a culvert in the embankment that the question of reasonable care is to be ascertained, but to repeat, whether it was negligence not to have anticipated a flood. This question we have determined in the negative; consequently it was not negilgence to fail to foresee the results which would follow a flood in connection with embankment. The failure to take precautions to prevent an injury, which if taken would have prevented it, is not negligence when the real source of the injury could not reasonably have been anticipated. *American Brewing Ass'n v. Talbot, supra.* And so in the case at bar, had the defendant taken the precaution to store the pianos on an upper floor, or had a culvert been constructed in the railroad embankment through which the flood waters could have escaped, they would not have been damaged. But under the ordinary rule of due caution and care this cannot be taken into account when it appears it could not be reasonably anticipated that the basement would be flooded by the overflow of Cherry Creek or from any other source.

When the manager of the warehouse company and his assistants reached the warehouse they at once took steps to remove the pianos, by an elevator, to the next

floor. Within a few minutes they were compelled to abandon this work, because the basement filled so rapidly. The motor which operated the elevator was in the basement, and the flood soon rendered it useless as a motive power. It is urged by counsel for plaintiff that placing the motor where it would be liable to be flooded was negligence. As already pointed out, it could not be reasonably anticipated that the basement might be flooded. It is also urged by counsel for plaintiff that whether the defendant had exercised due care in endeavoring to remove the pianos, after learning of the situation was an issue from which the jury could determine that defendant was guilty of negligence. The heavy rain in the afternoon had not caused any flooding of the basement. After that rain ceased the manager visited the warehouse. At that time he was not aware of the flood coming down Cherry Creek, which subsequently caused the damage, and knew nothing regarding it until advised by the watchman at the warehouse. The latter learned of it, so he says, about 7:30 or 8 o'clock p. m., but states that as soon as he was told the flood was coming he telephoned the manager, who says this was about 8:15 p. m., and it appears that he acted promptly in endeavoring to reach the warehouse, telephoning for assistance, and on the way picking up two employees, and at once took steps to remove the pianos.

There is testimony to the effect that a few days prior to the flood the manager of the piano company objected to having the pianos stored in the basement. This objection, however, was not upon the ground that there was any danger of a flood. From the testimony we are of opinion that the defendant was not guilty of negligence. The former opinion is withdrawn, the judgment entered thereon vacated, and the judgment of the District Court

reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Judgment reversed.*

Decision *en banc.*

Mr. Justice SCOTT dissents.

Mr. Justice TELLER not participating.

Per Curiam:

On petition for rehearing, counsel *amici curia* request that the opinion be modified in certain particulars because what is said regarding the flood may affect other litigation now pending. On this subject it is only necessary to say, that the decision is based upon the record in the case.

*Rehearing denied.*

Decision *en banc.*

Decided December 6, A. D. 1915. Rehearing denied December 4, A. D. 1916.