## No. 8626.

DENVER & RIO GRANDE RAILROAD COMPANY *v*. THOMPSON.

1. PLEADING AND EVIDENCE—*Recovery Allowed,* only upon the allegations of the complaint.
2. NEGLIGENCE—*Not Presumed,* from the mere occurrence of an accident. Conjecture is not to take the place of evidence. The evidence examined and held insufficient to warrant the judgment in favor of the plaintiff in the Court below.

*En Banc.    Error to Chaffee District Court, Charles A. Wilkin, Judge.*

Messrs. E. N. CLARK, R. G. LUCAS and T. M. STUART, Jr., for plaintiff in error.

Messrs. HILL, J., and TELLER, J., dissent.

Mr. G. K. HARTENSTEIN, for defendant in error.

Mr. Justice Garrigues delivered the opinion of the court.

THIS action was instituted in the court below by Thompson, whom we will designate as plaintiff, against the Denver & Rio Grande Railroad Company, to obtain a judgment for damages occasioned by reason of an injury sustained by plaintiff, which he alleges was caused by the negligence of the railroad company. Judgment was entered upon a verdict returned in his favor, to review which defendant brings the case here on error.

The grounds of negligence alleged in the complaint are: That the employes of the company carelessly and negligently manipulated a hoist they were using, and carelessly and negligently failed to secure or fasten it so as to prevent it from moving, after the air hose was attached, and, the hoist being free to move and easily moved, defendant's employes negligently and carelessly permitted it to move or to pull or draw upon the hose with sufficient force to disconnect the coupling. Plaintiff's attorney in his brief states his position regarding the cause of the accident to be:

"That the air hose separated, or was uncoupled, because the hoist was pushed or pulled too far to the south, causing the hose to be stretched and pulled into a horizontal position, which caused the coupling to separate."

Plaintiff was employed by defendant as a machinist in its shops at Salida, Colorado, and operated a planer, near which was a movable hoist used to lift and move machinery. This hoist was mounted on rollers and suspended from a beam or rail, on which it was moved by being pushed or pulled along. A rubber air hose 8 feet 5 inches long hung down from the hoist, and there was a stationary air pipe along the ceiling from which was suspended another piece of rubber hose 13 feet 10 inches long. At the loose ends of these pieces of hose and used to attach them together was a standard Westinghouse air line coupling—such as is used in connecting cars for air brake service—1 foot 9 inches long, making the total length of the hose when coupled 24 feet. The relative position of the machinery is illustrated by the accompanying sketch:

The distance between the planer and the lathe was 9 feet and 10 inches. The hoist is operated by means of compressed air conveyed from the stationary iron pipe, through the coupled rubber hose into the piston chamber of the hoist. When it is desired to operate the hoist, these two pieces of hose are connected by the Westinghouse air coupling. On the day of the accident, while plaintiff was seated on and operating the planer, witness Elliott, a coemploye, used the hoist to pick up a pair of tank wheels and take them to the lathe. There was evidence that as the hoist with its load was pushed into position over the lathe and was about to be lowered, the hose coupling became disconnected and the piece attached to the hose leading from the stationary air line, swung towards plaintiff, the air pressure causing the end to fly around and strike him, knocking him from the planer to the floor, the fall resulting in the injury complained of. An examination of the coupling immediately after the accident disclosed no defect in any of its parts.

Garrigues, J. (after stating the facts as above) :

(1)   Plaintiff must recover upon the allegations of his complaint. *Elkton Co. v. Sullivan*, 41 Colo. 241-250, 92 Pac. 679; *Soden v. Murphy*, 42 Colo. 352-356, 94 Pac. 353; *Chaffee v. Widman*, 48 Colo. 34-41, 108 Pac. 995, 139 Am. St. Rep. 220.

(2)   No presumption of the negligence charged arose from the mere happening of the accident. *Greeley v. Foster*, 32 Colo. 292-300, 75 Pac. 351; *City of Denver v. Spencer*, 34 Colo. 270-276, 82 Pac. 590, 2 L. R. A. (N. S.) 147, 114 Am. St. Rep. 158, 7 Ann. Cas. 1042; *D. & R. G. Co. v. McComas*, 7 Colo. App. 121-123, 42 Pac. 676; *Bishop v. Brown*, 14 Colo. App. 535-548, 61 Pac. 50.

(3)   A resort to mere conjecture or possibilities will not take the place of direct or circumstantial evidence. No number of mere possibilities will establish a probability. *Elkton Co. v. Sullivan*, 41 Colo. 242, 92 Pac. 679; *Patton v. Railway Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; *Samulski v. Menasha Co.*, 147 Wis. 285, 133 N. W. 142.

(4)   It appears from the evidence that this particular
hoist had been in daily operation in the shop where plaintiff
was working for at least 6 years.   There is no evidence as
to the cause of the uncoupling of the hose.   None of the
witnesses were able to assign any cause.   Plaintiff's theory
is that the hoist was pushed or pulled so far as to cause the
hose to be stretched or pulled in a horizontal position, caus-
ing it to become uncoupled.   But there is no evidence to sup-
port this theory.   Moreover, it was physically impossible to
stretch a 24-foot hose to a horizontal position under the con-
ditions and circumstances shown by the testimony, and there
being no evidence establishing, or from which the cause of
the parting of the coupling may be legally inferred, the jury
could not guess that it was due to any negligent act or omis-
sion on the part of the defendant; consequently the judg-
ment cannot stand.

*Reversed and remanded.*

Teller, J., dissents.

Hill, J. (dissenting).   I have no criticism to offer con-
cerning the authorities relied upon to sustain a reversal in
this case, but I cannot agree with the deductions purported
to be gathered from the testimony.   As I read it, it fails to
disclose that the hose had to be in perfect horizontal position
in order to become disconnected, or that all of it had to be
anywhere near a horizontal position in order for the cou-
pling to become disconnected, but to the contrary that it
would sometimes become disconnected when that portion
which held the ends of the coupling reached a somewhat
horizontal position.

The record discloses that when the witness Lewis was on
the stand this coupling was before the jury and was, in their
presence, coupled three times by the witness and E. G. Has-
kins, and by them pulled straight or taut when it came apart
each time.   The witness Ecklund, a machinist of experience
who had worked in these shops 6 years, testified that there
were three of these connections with hose all constructed on
the same line connection that was used as the one where
Thompson's planer was; that there is a short one hanging

on the cylinder, then wherever you are at you connect; that one of these had become disconnected two or three times in the year preceding; that for this reason he tied the hose together when he used it; that he did this to be on the safe side; that he would not take any chances of the hose flying around him when it did break apart. In commenting as to how far you can move the hoist while the hose is connected, how many feet each way, he said:

"Oh, about 10 feet; if you move it further than 10 feet it is liable to become disconnected; don't know why it comes apart."

Also:

"I said just now that if the hoist were moved too far it would become disconnected. And when I said that I thought it could move about 10 feet, I guessed at that; in other words, the fact is that if the hoist is moved so as to stretch the hose out too far, then when it goes too far for the length of the hose it will separate, and that is what I meant."

The witness Wilson, a machinist who had worked in these shops a number of years and was there at the time the plaintiff was hurt, said:

"As to the effect, if any, it would have upon the hose if the hoist is moved in either one direction or the other, taut, it would not have any material effect, unless it was pulled too far, then it would have a tendency to let go; that is, coming apart. If the hoist is moved in either direction, one way or the other, too far, it would have a tendency to disconnect it; that is, far enough to straighten the hose. If it came far enough it would straighten the hose, and I think it would disconnect it; I think so."

Mr. Holman, a machinist for 30 years, who worked in these shops, testified:

"As to whether that hose would be uncoupled as I found it that morning if it was properly handled and properly manipulated I don't know. Something unusual had to happen, or else it had to be handled in a careless and reckless way to come apart, in my judgment."

Also:

"This hose, in my judgment, that is here in question, and

that came apart that morning, would not have come apart if it had been properly handled and manipulated. That is my idea of it."

The plaintiff testified that when they shoved the hoist the air pipe pulled apart; also, "It is liable to pull apart if you push it too far." In my opinion this testimony and the demonstration before the jury (where the coupling appears to have come apart in the manner the plaintiff contended it would and did at the time of the accident) presents evidence sufficient to go to the jury upon the question of the alleged negligence in the handling of the hoist. The plaintiff was not required to prove this fact by direct testimony. Negligence may be proved by showing circumstances from which it may fairly and logically be inferred. *Hotchkiss Mt. M. & R. Co. v. Bruner*, 42 Colo. 305, 94 Pac. 331.

The rulings of this court have been uniform that where the evidence is such that different minds may honestly draw different conclusions, it is a question for the jury. *Catlett v. C. & S. R. Co.*, 56 Colo. 463, 139 Pac. 14; *Nichols v. C. B. & Q. R. R. Co.*, 44 Colo. 501, 98 Pac. 808; *Williams v. Sleepy Hollow M. Co.*, 37 Colo. 62, 86 Pac. 337, 7 L. R. A. (N. S.) 1170, 11 Ann. Cas. 111.

As I view it under the authorities last cited, the question of the negligence of the defendant in the manner complained of was properly submitted to the jury.