### No. C-354

**The People of the State of Colorado, In the Interest of R.D.S., Upon the Petition of S.F.M. by P.J.B., Next Friend, And Concerning A.S., a/k/a T.S., a/k/a R.S.**

(514 P.2d 772)

Decided October 9, 1973. Rehearing denied October 23, 1973.

Max P. Zall, City Attorney, Frank A. Elzi, Assistant, John Gross, Assistant, Robert A. Powell, Assistant, for petitioner.

Welborn, Dufford, Cook, Phipps & Brown, Thomas G. Brown, for respondent.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

We granted certiorari to the Court of Appeals to review their decision in the case of *People in the Interest of R.D.S., Child, Upon the Petition of S.F.M. and Concerning A.S.,* 32 Colo. App. 26, 507 P.2d 481 (1973). This is an action to establish paternity, 1967 Perm. Supp., C.R.S. 1963, 22-6-1. R.D.S. is the child whose paternity was at issue. S.F.M. is the petitioner-appellant and A.S. is the respondent-appellee.

Prior to trial, respondent A.S. moved that R.D.S., the child, be excluded from the courtroom and not be exhibited to the jury. The trial court granted the motion. The basis for that ruling, which we approve in part today, was that resemblance evidence was irrelevant when offered to show paternity. The jury returned a verdict of nonpaternity and S.F.M. appealed. The Court of Appeals affirmed, holding that exhibition of the child to the jury in a paternity action was a matter of judicial discretion which would only be error where that discretion was abused.

We hold the Court of Appeals was correct in affirming the judgment. However, we follow and adopt a different line of authority. For the reasons which follow, we affirm the decision of the Court of Appeals and affirm the trial court's judgment.

I.

■ Petitioner first contends that the trial court erred in excluding the child from the courtroom because a child is a party to a paternity action in Colorado and, therefore, has an absolute right to be present at trial. We do not agree.

■ A party is more than one named on a petition or complaint. To be a true party, that person must be competent to sue, have the right to control the proceedings, to defend, to adduce and cross-examine witnesses and to appeal in his own right. *Webb v. The Willet Co.,* 309 Ill. App.

504, 33 N.E.2d 636 (1941); *Gibbons v. Belt,* 239 Ia. 961, 33 N.W.2d 374 (1948). When the proceeding is statutory, the status of those before the court must be discerned from the applicable statute. Our statute, 1967 Perm. Supp., C.R.S. 1963, 22-6-1, permits three parties to bring suit to establish paternity:

"Proceedings to establish the paternity of a child and to compel support under this article may be commenced *by the mother,* whether a minor or not, *by the child's guardian* of the person, or, if the mother or the child is a public charge, *by the county department of public welfare.*" (Emphasis added.)

■ This statute, which does not recognize the child as a party, is consistent with the time-honored view that children cannot bring suit in their own name. The legislature having denied children such status, we cannot grant it by judicial fiat.

■ Petitioner argues, nonetheless, that we have recognized a child as a party in our past decisions. Two decisions are cited in support of that position. One is a Court of Appeals case not selected for official publication. The other is not in point. *Woodside v. People,* 137 Colo. 485, 326 P.2d 980 (1958). A child is not a party to a paternity action in this state. Conversely, a child does not have an absolute right to be in the courtroom during trial.

II.

The remaining issue is whether the Court of Appeals was correct in holding that exhibition of the child is discretionary with the trial court and that only on a showing of abuse of that discretion will the trial court's determination be overturned. Recognizing that there is a split in authority among other jurisdictions which lend credence to the reasoning by the Court of Appeals, we are persuaded that the better reasoned doctrine is as announced by the Supreme Court of Hawaii in *Almeida v. Correa,* 51 Haw. 594, 465 P.2d 564 (1970). Therein the rationale is aptly summarized in a *syllabus by the court* as follows:

"1. Since a child's face and individual features are not

inherited as a unit, any evidence, such as an exhibition of the child or testimony by an expert, for the purpose of showing general resemblance is irrelevant in determining a child's paternity.

"2. An individual inherits only the *potentialities* for specific parts of individual features to develop in a certain way through the transmitted genes, and these potentialities together with other factors such as environment and age, contribute to the formation of a trait. Accordingly, a focused study by a qualified expert is necessary to identify a relevant inheritable trait and make a knowledgeable comparison between child and alleged father.

"3. Because specialized knowledge is required to determine the relevance of physical traits to the issue of paternity and to ascertain the significance of the vast number of other non-hereditary factors involved in shaping a trait, any evidence concerning resemblance or nonresemblance must be given by the testimony of a qualified expert and not by an exhibition of the child."

The court in *Almeida* properly took the position that the only way an exhibition might possibly be justified would be in aiding the experts to point out the reason for their opinions, and suggested that even this method would not be desirable or acceptable, because other less prejudicial visual aids might be available.

The dangers of exhibiting a young child, without more, to a jury are obvious. Each of the jurors would not view the child in the same way and would bring into the jury room separate opinions and viewpoints — not necessarily relevant or scientific — as to resemblance or non-resemblance.

It should be emphasized that exhibition of the child to the jury is only evidence of general resemblance. The jury sees the child, and notwithstanding instructions to the contrary, will view the child's total physical structure. Looking first to the requirement that facts offered at trial must have probative value to be relevant, we are convinced that general resemblance has little, if any, probative force. Though the assumption that children resemble their parents is imbedded

in literature, *e.g.*, *Shakespeare, King John,* Act I, Scene I, there is a scarcity of scientific evidence to support that view. Indeed, the most recent scientific inquiries have made the opposite conclusion. (*See* authoritative comment in *Almeida v. Correa, supra.*)

Where the child is too young to have developed its own distinctive .characteristics, moreover, the probative force of evidence of general resemblance is all the more tenuous. In· Colorado, it is rare that the child will be more than five years old when the action is begun. 1967 Perm. Supp., C.R.S. 1963, 22-6-1(2). In view of these considerations, we cannot say that evidence of general resemblance is probative of paternity.

In addition, conflicting interests are presented by the exhibition of the child to the jury. Such exhibition has the potential to create undue sympathy for the child and mother. Concurrently, the jury may be prejudiced against the alleged father. There is also a great potential for racial prejudice if the child is the product of a racially mixed relationship. These factors, in turn, may involve the jury in the consideration of collateral issues not relevant to the case at issue.

█ Because the probative force of evidence of general resemblance is questionable, yet gives rise to the conflicting interests of undue jury sympathy, prejudice and confusion, we hold that exhibition of a child to jury, when offered to show paternity by way of general resemblance is irrelevant as a matter of law.

█ Further, any such exhibition without expert testimony effectively denies the respondent the right of cross-examination. This is so because the mere exhibition of a child without comment leaves a jury with the uncontroverted inference of similarities between such child and the alleged father. In this regard it should be noted that of those jurisdictions which do permit exhibiting a child to a jury, most require that some basis for such exhibition be established by testimony which in turn is subject to cross-examination on the question of resemblance. Annot., 40 A.L.R. 97.

█ Petitioner relies heavily on the decision of *Glascock v.*

*Anderson,* 83 N.M. 725, 497 P.2d 727 (1972). Colorado law, however, is in accord with the dissent in *Glascock* in that inferences may be drawn only from the facts in evidence and *may not* be based on mere speculation or conjecture. *See Leonard v. Bauer,* 112 Colo. 247, 149 P.2d 376 (1944); *Public Service Co. v. Williams,* 84 Colo. 342, 270 P. 659 (1928); and *Tyrrell v. Dobbs Inv. Co.,* 337 F.2d 761 (10th Cir. 1964). The dissent in *Glascock* points out:

"* * * the display of an infant to demonstrate a supposed resemblance to the putative father does not rise to the stature of evidence. Rather, [it] is an injection of speculation and conjecture regarding real or fancied resemblances existing in the eye of the beholder with a dash of old wives' tales in lieu of any basis in fact, scientific or otherwise. If such conjecture emanated from the lips of a witness it would clearly be objectionable."

 Unlike evidence of general resemblance, there is a firm scientific foundation for inferring parentage from the existence of evidence of specific resemblance. Specific physical characteristics, passed through generations by gene transmission can be attributed to parentage. *Almeida v. Correa, supra; A. Montagu, Human Heredity* (2d ed. 1963). Though such evidence is not determinative, its existence makes paternity, or nonpaternity, more probable than it would be without the evidence. Evidence of specific resemblance, therefore, is probative of paternity and should be admitted, but only when presented by a qualified expert witness who relates to the jury those characteristics which bear on paternity. Evidence of specific resemblance, by its very nature, requires the power to draw inferences from the facts which a jury composed of laymen is incompetent to draw. This difficulty, coupled with the necessity of expertise to make the factual data understandable, convinces us that only expert testimony can aid the jury. *McCormick on Evidence,* § 13 (E.W. Cleary ed. 1972).

The decision of the Court of Appeals is affirmed.

MR. JUSTICE KELLEY does not participate.