## No. 20,126.

MARYLAND CASUALTY COMPANY, ET AL., *v.*
ALVIN L. KRAVIG, ET AL.
(385 P. [2d] 669)

Decided October 7, 1963.   Rehearing denied November 4, 1963.

Miss MARGARET E. BATES, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK, E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

Mr. LANSFORD F. BUTLER, for defendant in error Elvin L. Kravig.

*In Department.*

Opinion by MR. JUSTICE DAY.

THIS is a workmen's compensation case. We will refer to the parties as "employer," "claimant" and "Commission."

Claimant was granted three hearings. At the first hearing the claimant, a witness who was at or near him at the time he claims to have been "hurt," and a relative all testified. The referee then continued the matter to a second hearing, at which was taken the testimony of two doctors who saw claimant immediately after the incident forming the basis of this claim. On this evidence, details of which will be later discussed with more particularity, the referee entered findings, amply supported by the record, denying compensation. In substance the reason for the denial was that the claimant had suffered an aneurysm, resulting in massive hemorrhage in the brain; that this was a congenital condition unrelated to and having no causal connection with the incident described by the claimant upon which he relied as an "industrial accident." The Commission adopted the findings of the referee and entered its order denying compensation.

Because the claimant failed to follow the statutory procedure with reference to perfecting review of its or-

der, the Commission made the order final, and thus the results of the first hearing could not be reviewed in the district court or here. *Brown v. Colorado Fuel & Iron Corporation,* 111 Colo. 253, 140 P. (2d) 619; *Industrial Commission v. Plains Utility Co.,* 127 Colo. 506, 259 P. (2d) 282.

Thereafter the claimant filed a petition admitting that the Commission was "technically" correct in refusing to review its findings in making the order final, but petitioned that the case be reopened on the ground of "change in condition." The "change" alleged was that at the first hearing the claimant had difficulty in speaking because of partial paralysis and that since the first hearing he had fully regained his faculties of speech. This change being a substantial improvement in the claimant and not a worsening of his condition (which is the usual ground of reopening a case because of change of condition) the Commission on its own motion reopened on the ground of "mistake."

Thereafter a third hearing was held at which the claimant was the only witness except for additional medical testimony. At this hearing he related an entirely different story, described an "accidental blow" never mentioned by him before to anyone and, in effect, repudiated and impeached his previous testimony, the testimony of the four witnesses called by him at the previous hearing, and his written claim for compensation. On the basis of his new story, the referee found that it too failed to establish a causal connection between what he then claimed happened to him and the aneurysm which he had suffered. The Commission, however, overruled and set aside the referee's findings and entered findings of its own, ordered maximum compensation to be paid for total temporary disability and "until such time as claimant shall have attained maximum improvement" and reserved until an indefinite date the determination of permanent disability, if any.

The district court affirmed the order of the Commis-

sion. To that judgment the employer and his insurance carrier bring this writ of error.

■ We will first take up the propriety of the Commission's action in reopening the case for an asserted "mistake." When the Commission has lost jurisdiction because review has not been sought within the statutory time it can, on a proper showing, reopen the case on a finding of error, mistake or change of condition. However, the question of the right to reopen being jurisdictional, a denial of the petition to reopen requires no findings; if the petition is granted *specific findings* as to the error or mistake or the change in condition are *mandatory*. *National Lumber & Creosoting Co. v. Kelly*, 99 Colo. 442, 63 P. (2d) 457; *Kokel v. Industrial Commission*, 111 Colo. 188, 139 P. (2d) 259.

■ In the case at bar the attempt of the Commission to comply with this rule does not meet the mandatory *requirements of a finding*. In addition, there is no evidence to support what the Commission designated as the *probable* mistake. The Commission found: "* * * that the mistake in all *probability* existed in the *receipt of testimony* at his hearing [the original hearing] before the referee, and in the interest of correcting *that mistake* and *error* it is necessary that the case be reopened * * *." (Emphasis supplied.)

If this finding, characterized as a probability, means that it was a mistake to hold the first hearing and to take testimony thereat, the record does not support such a finding. There is no conflict on the point, thus we are not bound by the Commission's finding, if such it was. *Arvas v. McNeill Coal Corp.*, 119 Colo. 289, 203 P. (2d) 906. The record shows that the referee at the first hearing was advised that the claimant would have some difficulty in speaking, but that is all that was said or done on this phase.

There was no request for a continuance on the ground of his speech impediment and no showing that the claimant was not ready or that he would be unable to present

his case or be prejudiced if the hearing were held. He was present, offered himself as a witness, and had two other witnesses to corroborate his story. Because of claimant's speech difficulty, the referee permitted counsel to ask leading questions. There was no contention that he could not understand the questions; that he did not have all of his faculties, or that he did not have an awareness of what was going on. This hearing from the reading of the transcript was not a confused one. The claimant was in no different position than many persons who are without the ability to speak, even completely dumb from birth or with other speech impediments. If one is able to communicate in one fashion or another and to demonstrate the complete use of one's mental faculties, including reasoning and memory, the fact that the mode of communication is awkward or difficult does not make the hearing a nullity. One may communicate with a nod or by writing notes or through gestures and signs. Even these aids were not needed at the hearing. Counsel encountered no difficulty having claimant understand his questions and got ready answers, sometimes in terse sentences and sometimes with a "yes" or "no" response. However, claimant's testimony was entirely cumulative. He did not even have to testify to fully present his initial claim. He had four other witnesses who told the *same story* as he did. They were allowed wide latitude in relating what was *told them* by the claimant. The real issue before the Commission was not the condition of the claimant on the date of his hearing but the condition of the claimant on the date of the alleged accident and whether he sustained injury therefrom. What took place on that day was related in exact detail by the claimant and his four witnesses. The claimant's recital of the facts to these four persons, one within minutes after the incident and others within a few hours thereafter, was very consistent.

One of the four corroborative witnesses was a disinterested resident of the area where claimant was work-

ing. His name was Peterson and he was out working in his yard and saw claimant sitting by some heavy equipment holding his head. He offered to aid the claimant, took him into his home and drove him to a doctor. The claimant saw two doctors that day and gave them a history of what had happened. Upon being taken to the home of his cousin, he again related the incident to her. Without any deviation claimant told these four people on each occasion that he was riding a heavy earth moving tractor; that he had his head turned toward the rear, and that he went over a boulder which caused his head to jerk and he felt a snap in his neck or a shooting pain in the back of his head. All of this was on his own behalf.

He told a fellow employee, before going to work, that he was suffering from a severe headache "due to a hangover." The headache got so intense that he had to stop the equipment and sit down beside it to rest, which was when the first witness whom he encountered offered him aid. It is also to be noted that some time later, when the claimant returned to his home in Oklahoma, he told his wife the same story, and although she did not testify at the trial, she was allowed to give the history of the incident to a physician who treated the claimant in his home city because by that time claimant had suffered a paralysis and was not able to speak. The written claim filed as the basis of his request for compensation was signed by the claimant with an X and by his wife. It reads:

"Describe exactly how accident occurred: Riding Caterpillar with employer on rocky ground—machine jolted, injured neck and head."

The Commission's first findings on the basis of these facts and the medical opinions were that the causal connection between the "riding over the bump" and "the jerking of the head" and the aneurysm had not been shown. One of the physicians testified that the report of the headaches before this incident which the claimant at that time described as a "hang-over" were consistent

with the onset of the aneurysm, which in lay language is a rupture of a blood vessel in the brain caused by a weakness in the wall of the vessel. The medical testimony was that it can come on at any time or it can be brought on by strain such as straining at stool, and would not be brought on by a jarring such as claimant described when he rode over the boulder. Therefore, the Commission's findings and denial of compensation were supported by the record so that no error was committed in that respect. Certainly there was no error or mistake in holding the first hearing, and the Commission cannot make it so by mere declaration. The power vested in the Commission to reopen does not contemplate setting aside one hearing and holding another hearing to give claimant a chance to so tailor his story as to overcome the first findings.

At the third hearing claimant was the sole witness as to the "new" version of the accident. This time he claimed that what he described before as the rolling over the boulder and the "bouncing" causing his head to be jarred was not really what happened. He said that "just two weeks ago" he remembered that he actually received a blow to the head and that "he doesn't remember telling anybody" about merely jarring his head when he rolled over the boulder, but he might have. He said when he hit the boulder it *stalled his machine*, that he had to get off the tractor, and when "he saw this big rock" he tried to dislodge it, but forgot to set his brakes. When he dislodged the boulder the tractor started moving ahead. He started to go to stop the machine and "caught his leg on the scraper, straightened up on the tractor and hit his head on the caterpillar"; that "he ran around the caterpillar to set the brakes and there was something wrong with his head."

In order to explain its acceptance of the second of the two widely divergent stories, the Commission made a finding that the claimant "was in such pain and in such a *confused state* that the history given to the two doctors

who saw him on the day of the incident "was incomplete and inaccurate." The Commission's finding of confusion and inaccuracy is not borne out by the record. One of the doctors testified that claimant "was quite coherent." The claimant gave the doctor his complete and subjective symptoms in detail. He told the doctor clearly what he was doing and what medicine he had already been taking for his pain. The second doctor whom he visited several hours later merely testified that at that time he was a "little fuzzy." He did not say he was confused. Claimant related the story of rolling over the boulder and jarring his head.

The Commission in other findings deftly sidestepped the competent medical opinion in the record, which was that even if the claimant had sustained a blow "that he now describes" that such a blow would not cause the aneurysm. The doctor responded to the following questions and answers:

"Q. The fact that he struck his head, would that have any significance in the matter? A. I don't believe so. No sir. Q. Even though he bruised his head? A. That is right. Q. Would that in itself be one of the factors that could cause a rupture? A. Well, as I already indicated, it would be extremely rare. Anything is possible in medicine, but I don't think it is very likely * * *."

So the Commission found not that the blow caused the aneurysm but that:

"The Commission believes and so finds, in a complete over all construction of the testimony and the evidence, that on May 8, 1959, claimant sustained an injury to his head in an accident arising out of and in the course of his employment, when in so attempting to dislodge a rock from the blade of the scraper, the vehicle started to move forward, and with *accompanying excitement and emotional strain claimant* struck and jarred his head on the metal control housing pillar of the vehicle, and that as a result of this accidental injury so sustained, claimant incurred and suffered an intercranial [sic] or sub-

arachnoid hemorrhage with resulting disability. (Emphasis supplied.)

The claimant did not testify that he was either excited or that he was emotional or that he had an emotional strain or any other kind of a strain. The only sentence in the whole record dealing with any "excitement or emotional strain" is the following statement by the doctor:

"Q. Doctor, do you feel there are any conditions in this case that could have caused a rise in the blood pressure? A. Well, I didn't think there were at the original history that I obtained. From the history that he gave me yesterday, I *think* or I *might suggest* that the excitement—fearing that this tractor was going to get away from him —getting run over—*possibly* that *could have* given rise to any increase in the blood pressure which caused an intracranial aneurysm to rupture." (Emphasis supplied.)

Another physician had no opinion on this point because he said he had never been given a history of any such happening and therefore wouldn't say as to whether there was the probability or possibility of an aneurysm resulting.

■ We have held that statements such as "could happen" "might happen" "it is a possibility" "I couldn't say absolutely" and similiar expressions are evidences of mere possibilities of a fact having occurred or having existed and are not sufficient to support a judgment. *Denver and Rio Grande Co. v. Thompson,* 65 Colo. 4, 169 Pac. 539; *United States Fidelity and Guaranty Co. v. Industrial Commission,* 122 Colo. 31, 219 P. (2d) 315; *Baeza v. Remington Arms Company,* 122 Colo. 510, 224 P. (2d) 223, and cases cited therein; *Deines Brothers, Inc. v. Industrial Commission,* 125 Colo. 258, 242 P. (2d) 600.

We hold that this award cannot be sustained either on the finding that a mistake occurred warranting reopening of the case or on the findings that the condition of the claimant was caused by an accident sustained in his employment. Accordingly, the judgment of the district court is reversed and the cause remanded with directions to

enter a judgment ordering the Commission to dismiss the claim.

MR. JUSTICE MOORE and MR. JUSTICE SUTTON concur.