No. 22223.

CLAIMANTS IN THE MATTER OF THE DEATH OF LELAND C. RUMSEY AND INDUSTRIAL COMMISSION OF COLORADO *v.* STATE COMPENSATION INSURANCE FUND AND JOLLY PLUMBING AND HEATING, INC.

(427 P.2d 694)

Decided May 15, 1967.

HIGBY, RENWICK & SMITH, ROBERT A. CARVELL, for plaintiffs in error in The Matter of the Death of Leland C. Rumsey.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, PETER L. DYE, Assistant, for plaintiff in error Industrial Commission of Colorado.

ALIOUS ROCKETT, FRANCIS L. BURY, FEAY BURTON SMITH, JR., RICHARD T. GOOLD, for defendants in error State Compensation Insurance Fund and Jolly Plumbing and Heating, Inc.

*In Department.*

Opinion by MR. JUSTICE DAY.

CLAIMANTS before the Industrial Commission were the widow and dependent children of the deceased, Leland C. Rumsey, who was employed by the Jolly Plumbing and Heating, Inc., one of the defendants in error.

Both the referee and the commission found that the deceased died as a result of an accident arising out of his employment, and death benefit awards were entered for the claimants. On review the district court of the City and County of Denver reversed the commission's findings and award. Claimants are here on writ of error seeking to reverse the district court's ruling and to have the commission's award reinstated.

The following facts are in the record without dispute: On June 15, 1962 a fire broke out in a dwelling being constructed near Colorado Springs. The fire originated in a bathroom and spread in the wall space behind the bathroom partition, which was described as "a natural chimney." The conflagration destroyed the roof and, as one witness stated, "one could see daylight" from the bathroom interior. In an effort to get at the fire behind the partition in the space where it was being "fed" by the draft in "the natural chimney" the medicine cabinet was wrenched out and carbon tetrachloride in a small hand fire extinguisher was sprayed in the area. One witness testified "there wasn't very much in it" and estimated that it was probably about half full. As near as could then be established, there was about a pint of the substance in the fire extinguisher. The fire was completely extinguished by the Fire Department.

The next day Jolly Plumbing and Heating, Inc. was engaged by the owners of the damaged residence to salvage the bathroom fixtures. Employee Rumsey was sent to the house to do that work. He first removed the toilet bowl and tank and took them out of the house and placed them in a pickup truck belonging to his employer. He then returned to the bathroom. A few minutes later Rumsey was found lying on the floor unconscious, retching and in convulsions. He was hos-

pitalized for about eleven days and died without regaining consciousness. An autopsy revealed that his death was caused by a rupture of an aneurysm and massive subarachnoid hemorrhage. It was established that the aneurysm was longstanding and was of a congenital cerebral type. The history of the patient indicated that he had been suffering from headaches for a considerable period of time prior to the fatal rupture, and the autopsy disclosed there had been a seepage from the aneurysm for several weeks prior to the fatal onslaught.

The referee found that death was caused by the inhalation of toxic fumes. (Chlorine gas and phosgene gas, the residual gases caused by the breakdown of tetrachloride being sprayed on a hot metal surface.) This the referee found increased the vascular pressure and produced the rupture.

■ The only question presented to us by this writ of error is whether the evidence supports the findings and award. We agree with the trial court that it does not.

■■ In order for a claimant to recover workmen's compensation, the burden is upon the one seeking the benefits under the act to establish by competent evidence an accident and *the causal connection* between the accident and death. The claimed accident in this case was the inhalation of noxious gas fumes. However, there was no evidence of any description that there were any fumes present in the bathroom nor any evidence of a concentration thereof sufficient to cause the nausea and vomiting. The commission's findings were entirely conjectural and based upon assumption not established by any known facts. The experts agreed that in order to determine whether the decedent had inhaled noxious fumes it must be known whether any fumes were present, and, if so, how concentrated in volume. The record contains expert opinion that it was entirely *unlikely* that there were any fumes left in the room because the carbon tetrachloride was sprayed into an opening between the partitions, which was

described as "a natural chimney." In addition, the roof had been burned off, thereby providing for additional circulation of air. The quantity of tetrachloride was very slight — approximately a pint. The autopsy revealed no noxious gases in the organs where the effects would be found if present. The liver and central nervous system showed negative reaction when subjected to tests intended to reveal whether poisonous gases sufficient to be fatal had been absorbed into the system.

██ It was the testimony of the expert witness that the inhalation of the noxious gases, *if* sufficiently concentrated, *could* cause nausea and vomiting, which, in turn, could increase the vascular pressure. This testimony, however, cannot support the award because it is entirely speculative. In order for the claimant to recover, the accident must be established and the causal connection must be shown with reasonable certainty to be probable. Both elements were lacking in the proof herein. Statements that "if" the gas was in sufficient concentration it "could" produce a result and similar statements are in the category clearly held not to support an award in *Maryland Co. v. Kravig*, 153 Colo. 282, 385 P.2d 669. In contrast to the conjectural nature of the presence of gas and its possible effect, was the expert testimony — not in the least conjectural and equivocal — that the vomiting and convulsions followed the rupture and are the symptoms of the intercranial pressure caused by the massive hemorrhage.

The judgment is affirmed and the cause remanded to the trial court with instructions to remand the case to the Industrial Commission for entry of an order denying the claim.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.