No. 24690.

MARGARET DAUGAARD *v.* THE PEOPLE OF THE STATE OF COLORADO, IN THE INTEREST OF MIQUELA REINA DAUGAARD, A CHILD, AND CONCERNING MARGARET DAUGAARD, RESPONDENT, AND UPON THE PETITION OF DONALD C. KELLOGG.
(488 P.2d 1101)

Decided September 27, 1971.

McKELVEY & McKELVEY, ANTHONY F. ZARLENGO, HOW-
ARD M. KIRSHBAUM, for plaintiff in error.

HAMILTON & HAMILTON, E. B. HAMILTON, JR., for de-
fendants in error.

*In Department.*

Opinion by MR. JUSTICE LEE.

THIS writ of error is directed to a judgment of the

District Court of La Plata County which decreed the child of Margaret Daugaard to be dependent and neglected, terminating the parental rights of the mother, and awarding custody of the child to Donald C. Kellogg and his wife, Geraldine Kellogg, petitioners in the trial court.

The petition alleged the following statutory grounds of dependency: (1) that the child had been abandoned by its parents; (2) that it lacked proper parental care through the actions or omissions of its parents; and (3) that the child's parents fail or refuse to provide proper or necessary subsistence, medical care or other care necessary for its health, guidance or well-being. 1967 Perm. Supp., C.R.S. 1963, 22-1-3 (19) (b), (c) and (e).

The trial court found: "That the child * * * is a neglected or dependent child within the meaning of the Colorado Children's Code" and "[t]hat, while in the care of its mother, the child suffered from marasmus, a serious syndrome caused by lack of physical attention and other proper care; and that this condition was caused by actions or omissions of the respondent." No finding was made by the court concerning the first and third allegations of dependency, and the record is totally devoid of any evidence in support of those allegations.

█ Although procedural deficiencies are asserted which would, if sustained, require reversal, we consider only the substantive issue of whether there was substantial competent evidence in the record sufficient to sustain the trial court's findings, upon which it concluded that the child was neglected and dependent. We find a dearth of such evidence and, therefore, reverse.

The record shows the child was a 6½-month premature baby, weighing only two pounds, eleven ounces at its birth on October 3, 1968. Although the mother was released from the hospital on October 16, the infant was kept in an incubator for special care and treatment and was not released from the hospital until November 28.

When it had achieved sufficient strength and weight, upon the recommendation of the attending physician, it was then placed by the mother in the care of a registered nurse who cared for the child until January 16, 1969. The mother then assumed the custody and care of the child until the 5th of April 1969. Feeling herself unable to continue caring for the child because of emotional and physical problems, the mother considered placing the baby in an orphanage. She was persuaded, as an alternative, to permit the child to live in the care of the petitioners, Donald C. Kellogg and his wife, Geraldine. Adoption of the child was discussed by the Kelloggs with the mother. Although she considered this, the record is clear that consent to adopt was never given.

The record shows that the mother undertook medical treatment for herself during the next few months and recovered her health sufficiently to enable her to care for her child. Desiring that the child be returned to her, she made demand upon the Kelloggs in December 1969 for return of her child. The Kelloggs refused and commenced dependency proceedings.

No evidence was offered that the mother was not emotionally, physically and financially able to provide a suitable home for her child. She had personally paid the medical and hospitalization expenses in connection with the birth of her baby, the cost of its care and maintenance while in the temporary custody of the registered nurse, and she had offered to pay for the care and maintenance of the child while in the custody of the Kelloggs. This offer was refused.

Undisputed evidence of the mother's good character was presented and it was shown that she had successfully raised two sons, who were then in their teens, this without the assistance of their father from whom she had been divorced many years earlier. Further, no evidence was presented that the home provided by the mother was an unsuitable and inadequate place in which to house her child.

The sole basis of the court's conclusion of negligence and dependency was that the child suffered from marasmus while in the care of its mother during the period from January 1969 to April 1969.[1] The only evidence which tended to support this finding was disputed evidence, that the child, when placed with the Kelloggs, demonstrated symptoms of listlessness, unresponsiveness to noise, visual or other stimuli, immobility, and general apathy. An expert witness, a psychologist, who had neither seen nor examined the child during that period of time, and who had examined the child only shortly before the court hearing, was permitted to testify, over objection, that based upon the details of the description of the child related to him by the Kelloggs there were "preliminary signs of a syndrome referred to as marasmus." He explained marasmus to be a disease which results from environmental deprivation consisting of lack of concern, inattentiveness, or absence of a close parental relationship with an infant child. He testified that the critical time period during which marasmus might develop was the first year of life and that the disease would be most severe if it developed in the second half of the first year.

Here, the subject child was in the care of the hospital during the first eight weeks of its life, with a registered nurse the next seven weeks, and with its mother during the remaining eleven weeks of its first six months of life. It was then in the custody of the Kelloggs for the next nine months.

Examination of the child was conducted by the psychologist on December 20, 1969, and January 13, 1970. His professional opinion was that the child was "essentially normal in all its developmental spheres save for a gross motor development and it appears there is some

---

[1]Marasmus is a progressive wasting and emaciation, especially in infants, where there is no obvious or ascertainable cause. *Dorland's Illustrated Medical Dictionary* (23rd ed.) *See also Stedman's Medical Dictionary* (21st ed.)

element of mild retardation." The element of mild retardation was attributed to the "preliminary signs of marasmus," which presumably were caused by the mother's inattention to the child, although there is no evidence in the record to support such inferences.

■ We find several problems with such evidence. First, its competency is suspect. Although the Children's Code permits hearings to be conducted in an informal manner, the Code does not dispense with rules of evidence which directly bear upon substantive proof. 1969 Perm. Supp., C.R.S. 1963, 22-1-7. Here, objection was promptly made to the opinion testimony offered by the psychologist, which was predicated upon hearsay (matters previously related to him by the Kelloggs), not upon undisputed facts in evidence or facts clearly set forth and assumed to be true in the form of hypothetical questions to the expert, who here had no direct first-hand knowledge of the condition of the subject child at the critical period of time, some nine months prior to its examination. *O'Brien v. Wallace*, 137 Colo. 253, 324 P.2d 1028; *C. McCormick, Law of Evidence* §§13 and 14.

■ Second, and perhaps a more critical problem, is the inherent lack of probative value of the opinion given. Nowhere did the witness predicate his opinion upon a *reasonable medical certainty or probability* that the condition of marasmus did in fact exist; rather, his opinion was essentially based upon possibilities that such existed.[2] This amounts to no more than conjecture and speculation and is not a competent basis for opinion evidence. Nowhere did the expert testify that *probably* the child was suffering from marasmus, as the court ultimately found. *Maryland Co. v. Kravig*, 153 Colo. 282, 385 P.2d 669; *Baeza v. Remington Arms Co.*, 122 Colo. 510, 224 P.2d

---

[2]For example, the expert testified in the following and similar terms: "I have the *feeling* and opinion that there were preliminary signs of a syndrome referred to as marasmus. . . ." "I would *think* it was a showing of preliminary signs of marasmus." In his written report he stated: "Such behavior *could* very well be a preliminary indication of marasmus." (Emphasis added.)

223; *Twombley v. Fuller Brush Co.,* 221 Md. 476, 158 A.2d 110; *Lockwood v. McCaskill,* 262 N.C. 663, 138 S.E.2d 541; *Crawford v. Seufert,* 236 Or. 369, 388 P.2d 456, 2 A.L.R.3d 354; 31 Am. Jur. 2d *Expert and Opinion Evidence* §§44, 113. Assuming, arguendo, that the testimony was properly before the court, at most it suggests "preliminary signs" of marasmus, which can scarcely be equated with the disease of "marasmus, a serious syndrome caused by lack of physical attention and other proper care; and that this condition was caused by actions or omissions of respondent," as found by the court.

▪ Finally, we cannot say that the parental duty to protect, care for and nurture one's offspring during infancy and the formative years of childhood is so offended and breached as to justify a finding of dependency and the drastic action of termination of parental rights, because of the occurrence of an illness or disease in a child, absent a showing by a preponderance of the evidence that such illness or disease was caused by or resulted from a lack of parental care through acts or omissions of the parent. No such showing was here made. The decree of dependency and termination of parental rights must therefore be vacated.

The judgment is reversed and the cause remanded with directions to dismiss the petition.

Mr. Chief Justice Pringle, Mr. Justice Kelley and Mr. Justice Groves concur.