**The PEOPLE of The State of Colorado, Petitioner**

v.

**Juan R. RAMIREZ, Respondent.**

No. 06SC71.

Supreme Court of Colorado, En Banc.

March 26, 2007.

As Modified on Denial of Rehearing April 16, 2007.*

* Justice Eid does not participate.

John W. Suthers, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

We granted certiorari in this case to review the court of appeals' decision that the expert testimony of a certified pediatric nurse practitioner in a sexual assault case should not have been admitted by the trial court. The nurse described her findings as "suspicious" and testified that her conclusions were not based on a reasonable degree of medical certainty. After reviewing the cases on which the court of appeals based its decision, we find that the standards of admissibility set forth in those cases, including the requirement that expert medical testimony be offered with a reasonable degree of medical certainty or probability, predate the Colorado Rules of Evidence, which is the modern standard for determining the admissibility of expert testimony. Further, those cases are based on prior cases addressing sufficiency of evidence rather than admissibility of expert

testimony. Applying the Colorado Rules of Evidence to this case, we find the nurse's testimony is sufficiently reliable and relevant to be admissible.

Additionally, we disagree with the determination of the court of appeals that the offense of sexual assault on a child includes a requirement of specific intent that the touching be done for the purposes of sexual arousal, gratification, or abuse; it is inconsistent with our subsequent resolution of this question in *People v. Vigil,* 127 P.3d 916 (Colo.2006).

## II.  Facts and Procedural History

The defendant Juan Ramirez ("Ramirez") and the victim's mother were married between 1997 and 2000. After their divorce, Ramirez continued to visit and stay overnight at the home where the victim and his two siblings resided with their mother. Ramirez was not the biological father of any of the children.

In January 2001, the victim, AV, told a friend from school that Ramirez was sexually assaulting him. AV was ten years old at the time. The friend reported AV's statements to her mother, who notified authorities. At trial, AV testified that Ramirez had sexually assaulted him. AV's brother also testified that he had witnessed one of the assaults on AV by Ramirez.

The day after AV's mother became aware of the sexual assault allegations, she took AV to a hospital for an examination. The emergency room physician who examined AV testified that AV's perineal-rectal area looked normal at that time, but that a normal exam did not rule out sexual abuse. He also testified that no special instrumentation was used during the examination.

A little over a month after the hospital exam, AV went to the Monfort Children's Clinic for further examination. At the clinic, AV was examined by Kimberly Burns ("Burns"), whose testimony is at issue here.

At trial, Burns testified as to her expertise, explaining that she has a master's degree in the primary healthcare of infants, children,

and adolescents, and is a certified pediatric nurse practitioner. She also discussed her related work background and her specific training in child sexual assault examinations. She stated that she had done ninety-one sexual assault examinations and had testified in court as an expert in the area of child sexual assault examinations in five cases. After this explanation, the People offered Burns as an expert in the area of child sexual assault examinations. Defense counsel requested voir dire, and proceeded to ask Burns about her certifications and conclusions.

At one point, defense counsel asked Burns if she had been able to reach any conclusion to a reasonable degree of medical certainty. After asking for further clarification, Burns replied that her findings "are suspicious, but not diagnostic." Defense counsel stated, "And so you have not reached a conclusion to a reasonable degree of medical certainty in this case, have you?", and Burns answered, "Correct." Following his questioning of Burns, defense counsel objected to Burns' testimony on the grounds that she was not qualified to render an expert opinion, and that under CRE 702[1] and *People v. Shreck,* 22 P.3d 68 (Colo.2001), her testimony would not be helpful to the jury because it would not be to a reasonable degree of medical certainty. The People argued that Burns was qualified and noted that Burns' testimony would provide an expert opinion on the significance of a "so-called normal or [sic] genital exam," which would be helpful to the jury. The trial court qualified Burns to testify in matters relating to sexual assault evaluations, but reserved ruling on her opinions until later.

The direct examination resumed with Burns describing the sexual assault examination she conducted on AV. Burns explained that there are four possible findings: 1) "normal," which is the most common finding, 2) "non-specific," which could be a normal finding but also could be associated with sexual abuse, 3) "suspicious," which "raises my index of suspicion" and is a finding that may

---

1.  Specific rules from the Colorado Rules of Evidence will be referred to as "CRE" followed by the applicable rule number.

well have been caused by sexual abuse but could have been caused by something else, and 4) "definitive," which is definite evidence of sexual abuse and is a very rare finding. Burns found the results of her examination of AV to be "suspicious." [2]

Burns also explained that although sometimes there are visible signs of injury on a child subjected to sexual abuse, often the injuries will heal completely without a sign of an injury. Therefore, in Burns' training, a normal examination would not necessarily rule out sexual abuse. She also described her use of a special tool in examinations (colposcope) that allowed her to see more detail, and said that it would not surprise her if a doctor who did not have access to a colposcope would report a normal examination.

The next day, defense counsel renewed his objection to Burns' testimony under CRE 702 and *Shreck* arguing that her testimony was not useful to the jury. Specifically, he noted Burns' statement that her examination of AV resulted in a "suspicious" finding was not explained. The People argued Burns' testimony that a normal examination does not rule out sexual abuse should be admissible to refute a lay person's reasonable assumption that you would expect to see an injury. The People also argued that although Burns' "suspicious" finding was not conclusive evidence of sexual abuse, it was nevertheless helpful to the jury. The trial court allowed Burns' testimony, finding her statement that the results of her examination of AV were "suspicious" would be useful to the jury.

Ramirez was convicted of one count of sexual assault on a child. Ramirez appealed his conviction, challenging the admission of Burns' testimony and the jury instructions.[3] The court of appeals reversed the conviction

and sentence, finding that the trial court erroneously admitted Burns' testimony. *People v. Ramirez*, No. 03CA1600, slip op. at 1, 2005 WL 2666653 (Colo.App. Oct. 20, 2005) (not selected for official publication pursuant to C.A.R. 35(f)). The appellate court also directed the trial court upon remand to instruct the jury that the offense of sexual assault on a child includes a requirement of specific intent that the touching be done for the purposes of sexual arousal, gratification, or abuse, in conformance with *People v. Vigil*, 104 P.3d 258 (Colo.App.2004), *aff'd in part, rev'd in part*, 127 P.3d 916 (Colo.2006). Slip op. at 12. The People petitioned for certiorari on these issues, and we granted the petition.[4]

### III. Analysis

#### A. Admission of Nurse Burns' Testimony

The court of appeals found that even if Burns was properly qualified as an expert, her opinion was not admissible. Slip op. at 2. This holding was based on the court's finding that Burns' testimony was speculative and therefore not a competent basis for an expert opinion. *Id.* at 6.

After reviewing the cases on which the court of appeals based its opinion, we find the standards used by the court are antiquated and not appropriate to deciding the admissibility of expert testimony under the Colorado Rules of Evidence, the current standard. Reviewing Burns' testimony under the modern standard, we find her testimony admissible.

#### 1. Standards of Admissibility of Expert Testimony Used by the Court of Appeals

As discussed in more detail in the next part of this opinion, the Colorado Rules

---

2. Although not brought out at trial, during a pretrial hearing Burns testified that the "suspicious" finding was a healing laceration that she did not feel was consistent with any cause other than sexual abuse.

3. Ramirez also challenged the trial court's denial of his request to review Department of Social Service records, which is not at issue here.

4. The specific issues on which we granted certiorari were:

1) "Whether the expert testimony of a certified pediatric nurse practitioner should have been admitted at trial where the expert testified her finding was 'suspicious' and acknowledged she had not reached a conclusion to a reasonable degree of medical certainty," and
2) "Whether the court of appeal's [sic] decision to require the trial court to change the jury instruction on sexual assault on remand was incorrect in light of this court's decision in *People v. Vigil*, 127 P.3d 916, (Colo.2006)."

of Evidence currently govern the admissibility of expert testimony. *People v. Martinez,* 74 P.3d 316, 323 (Colo.2003) (*citing Masters v. People,* 58 P.3d 979, 988 (Colo.2002)). The Colorado Rules of Evidence were adopted by this court on October 23, 1979, and became effective January 1, 1980. Prior to the adoption of these rules, the admissibility of expert testimony was governed by common law.

In its opinion, the court of appeals acknowledged that CRE 702 governs the admissibility of expert testimony. Slip op. at 2. The court also noted some of our recent cases interpreting the admissibility of expert testimony under the Colorado Rules of Evidence, namely *Martinez,* 74 P.3d 316, *Masters,* 58 P.3d 979, and *Shreck,* 22 P.3d 68. *Id.* at 2–3. However, in addition to noting these modern cases, the court of appeals heavily relied on cases involving admission standards that either (1) predate the Colorado Rules of Evidence, or (2) are based on sufficiency of evidence rather than admissibility of testimony. Reliance on these cases leads to a standard of admissibility less flexible than that used today under the Colorado Rules of Evidence.

Specifically, the court of appeals noted that a medical opinion is admissible under Colorado law if founded on "reasonable medical probability," citing *Songer v. Bowman,* 804 P.2d 261 (Colo.App.1990), *aff'd,* 820 P.2d 1110 (Colo.1991), and *Daugaard v. People,* 176 Colo. 38, 488 P.2d 1101 (1971), for this conclusion. *Id.* at 3. Although the court did not directly assert that Burns' testimony was inadmissible because it was not stated with "reasonable medical probability," it appears to have used this standard to determine that Burns' testimony was inadmissible. The court found that Burns' "testimony addresses only possibilities and amounts to not more than conjecture and speculation; it is not a competent basis for an expert opinion," which is almost exactly the same language that the *Daugaard* court used to describe testimony it found was not stated with a "reasonable medical probability." [5] *Id.* at 6. Therefore, we trace the history of "reasonable medical probability" as used in *Songer* and *Daugaard* in order to determine the origin and definition of the phrase. In doing so, we find the phrase outdated and inappropriate for determining the admissibility of expert testimony. To the extent our earlier cases approve of this standard, they are overruled.

In *Songer,* the court of appeals found that a deposition in a medical malpractice case should not have been admitted, as "[a] medical opinion is *only* admissible if founded on reasonable medical probability," but it found the error harmless. 804 P.2d at 265 (emphasis added). *Songer* relied on *Thirsk v. Ethicon,* 687 P.2d 1315 (Colo.App.1983), for the proposition that "reasonable medical probability" was required for admissibility.

In *Thirsk,* a product liability tort case, the court of appeals held the trial court erred in excluding expert testimony regarding other possible causes of the plaintiff's injury. 687 P.2d at 1318. The court stated that "[a] medical opinion is admissible if founded on reasonable medical probability," citing *Houser v. Eckhardt,* 168 Colo. 226, 450 P.2d 664 (1969) for this rule. *Id.* Nonetheless, the *Thirsk* court found the trial court "unduly limit[ed] defendant's expert testimony on the grounds that its experts must state with reasonable medical probability exactly which one of the sources caused the infection...." *Id.* We also note the *Thirsk* court did not say that a medical opinion is admissible *only* if founded on reasonable medical probability, as was stated in *Songer.*

In *Houser,* we held a properly qualified medical expert who has examined a claimant solely for the purpose of evaluation and testimony in a tort case, rather than for treatment, should have been allowed by the trial court to testify to his opinion. 168 Colo. at 233, 450 P.2d at 668. We stated:

---

**5.** In *Daugaard* we stated:

Nowhere did the witness predicate his opinion upon a *[r]easonable medical certainty or probability* that the condition of marasmus did in fact exist; rather, *his opinion was essentially based upon possibilities that such existed. This*

*amounts to no more than conjecture and speculation and is not a competent basis for opinion evidence.*

176 Colo. at 43–44, 488 P.2d at 1103–04 (emphasis added).

We hold as a rule of evidence that a properly qualified medical expert who has examined a claimant for the purpose of evaluating the nature and extent of his injuries, and whose employment was for the purpose of testifying in court and not for the purposes of treatment, may testify to his opinion based upon *reasonable medical probability* as to the nature and extent of claimant's injuries and disabilities and to other related matters....

*Id.* at 233–34, 450 P.2d at 668 (emphasis added). We cited no case law in support of this portion of the opinion.[6]

Two things become clear from tracing the case history of *Songer*. First, *Houser* predated the Colorado Rules of Evidence by more than ten years, and any standard it established for the admissibility of expert testimony was supplanted when the Rules of Evidence were adopted. Second, as the phrase was used in *Thirsk*, "reasonable medical probability" was a sufficient but not necessary condition for the admission of the testimony. The *Thirsk* court did not say that *only* testimony that reached this standard was admissible; in fact, it specifically admitted expert medical testimony that was not offered with "reasonable medical probability." As a result, *Songer* relied on a standard from *Houser* that predated the Colorado Rules of Evidence, and transformed a sufficient condition from *Thirsk* into a necessary condition.

The second case the court of appeals relied on for its statement that a medical opinion is admissible under Colorado law if founded on "reasonable medical probability" was *Daugaard*. 176 Colo. 38, 488 P.2d 1101. In *Daugaard*, a case involving termination of parental rights, we found that a psychologist's testimony did not support the trial court's conclusion of dependency and neglect because it was based on hearsay, and because of:

the inherent lack of probative value of the opinion given. Nowhere did the witness predicate his opinion upon a *[r]easonable medical certainty or probability* that the condition of marasmus did in fact exist; rather, his opinion was essentially based upon possibilities that such existed. *This amounts to no more than conjecture and speculation and is not a competent basis for opinion evidence.* Nowhere did the expert testify that [p]robably the child was suffering from marasmus, as the court ultimately found. Assuming, arguendo, that the testimony was properly before the court, at most it suggests 'preliminary signs' of marasmus, which can scarcely be equated with the disease of 'marasmus, a serious syndrome caused by lack of physical attention and other proper care; and that this condition was caused by actions or omissions of respondent,' as found by the court.

*Id.* at 43–44, 488 P.2d at 1103–04 (citing *Md. Cas. Co. v. Kravig*, 153 Colo. 282, 385 P.2d 669 (1963); *Baeza v. Remington Arms Co.*, 122 Colo. 510, 224 P.2d 223 (1950)) (other non-Colorado citations omitted) (emphasis added) (footnote omitted).

Thus, the *Daugaard* court suggested that "reasonable medical certainty or probability" was the common law standard at that time for the admissibility of expert testimony. However, as is evident from the context, the court was primarily concerned that the evidence offered, i.e., the testimony of the psychologist, did not support the trial court's findings. This interpretation of the court's holding is supported by its citations to *Kravig* and *Baeza*. *Kravig* and *Baeza*, and all of the cases on which *Kravig* and *Baeza* rely, did not involve admissibility of testimony. Instead, *Kravig*, *Baeza*, and their precedents all involve situations where the court found the evidence did not support the judgment or

---

6. Although we cited no case law in support of the phrase "reasonable medical probability," the phrase probably has the same origin as the term "reasonable medical certainty." *See generally* Jeff L. Lewin, *The Genesis and Evolution of Legal Uncertainty About "Reasonable Medical Certainty"*, 57 Md. L.Rev. 380 (1998). Lewin's research suggests that the phrase originated in Chicago sometime between 1915 and 1930 and spread throughout other states due to adoption of models included in a best-selling manual on trial technique. He also notes that no consensus exists as to its meaning, and that most courts have rejected any mandatory formulaic expressions of medical certainty or probability as a prerequisite to the admissibility of expert medical testimony.

a finding of fact necessary for the judgment.[7] Whether the evidence is sufficient to support a judgment is a separate question from whether the evidence should be admitted in the first place. None of the cases on which *Daugaard* relied state or imply that speculative testimony is inadmissible. Therefore, the suggestion in *Daugaard* that "reasonable medical probability" was the current common law standard for the admissibility of expert testimony was incorrect in that we relied on cases that involved sufficiency of evidence. Further, even assuming *Daugaard* established a new common law standard of admissibility, it did so prior to the adoption of the Colorado Rules of Evidence and has thus been abrogated.

In its analysis, the court of appeals relied on *Roybal v. People*, 178 Colo. 259, 496 P.2d 1019 (1972) and *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), in addition to *Songer* and *Daugaard*, for its conclusion that Burns' testimony was "no more than conjecture and speculation" and was "not a competent basis for an expert opinion." Again, the court of appeals' reliance on cases that predated the 1979 adoption of the Colorado Rules of Evidence, and that were concerned with sufficiency of evidence to support a con-

viction or judgment versus admissibility of expert testimony, was improper.

In *Roybal*, an attempted burglary case, we found that "[p]roof that stands no higher than the level of suspicion, surmise or conjecture has no substance and cannot form the basis of a conviction under our system of criminal justice, which requires proof of guilt beyond a reasonable doubt." 178 Colo. at 262, 496 P.2d at 1021 (*citing Stull*, 140 Colo. 278, 344 P.2d 455). *Stull* involved a prosecution for receiving stolen property. The *Stull* court used similar but broader language, determining that "[p]roof that ascends no higher than the level of suspicion, surmise or conjecture has no substance in our system of jurisprudence, whether the problem considered be criminal or civil." 140 Colo. at 282, 344 P.2d at 457 (*citing* the Colorado cases of *Neal v. Wilson County Bank*, 83 Colo. 118, 263 P. 18 (1927) and *Thompson*, 65 Colo. 4, 169 P. 539). Again, the danger of speculative evidence as discussed in *Roybal*, *Stull*, and *Stull's* precedents did not involve the standard for admissibility of expert testimony. Instead, those cases involved whether the evidence was sufficient to support a conviction or judgment.[8] In addition, both *Roybal*

---

7. In *Kravig*, we found that evidence of "mere possibilities of a fact having occurred" is not sufficient to support a judgment, citing *Baeza* and the cases cited therein, *U.S. Fidelity*, and *Thompson*. 153 Colo. at 290, 385 P.2d at 674.

In *Baeza*, we noted that evidence of a mere possibility of a fact having occurred is not sufficient to support a judgment, relying on *U.S. Fidelity*, *Russell*, *Coakley*, and *Polz*. 122 Colo. at 515, 224 P.2d at 226.

In *U.S. Fidelity*, we held that findings based wholly upon conjecture and possibilities cannot be sustained, citing *Thompson*. *U.S. Fidelity & Guaranty Co.*, 122 Colo. 31, 34, 219 P.2d 315, 317 (1950).

In *Russell*, we found that a mere possibility would leave the solution of an issue of fact in a purely conjectural or speculative field, so as to establish no basis for a finding of fact, citing *Coakley* and *Polz*. *Russell v. Phillips*, 121 Colo. 342, 346–47, 216 P.2d 424, 426 (1950).

In *Coakley*, we held that the burden of proof of negligence cannot rest on surmise or speculation or conjecture, but must be grounded on substantial evidence, relying on *Polz*. *Coakley v. Hayes*, 121 Colo. 303, 306, 215 P.2d 901, 902 (1950).

In *Polz*, we found that mere possibilities leave the solution of an issue of fact in the field of conjecture and speculation to such an extent as to afford no basis for a finding of fact, citing

*Stenger* and *McNulty*. *Polz v. Donnelly*, 121 Colo. 95, 98, 213 P.2d 385, 386 (1949).

In *Stenger*, we found that it would be impossible to sustain the verdict based on the evidence presented. *Globe Indem. Co. v. Stenger*, 82 Colo. 47, 49, 256 P. 658, 659 (1927).

In *McNulty*, we held that if the evidence does not sustain the verdict, the judgment cannot stand. *McNulty v. Durham*, 63 Colo. 354, 361, 167 P. 773, 775 (1917).

In *Thompson*, we noted that a resort to mere conjecture or possibilities is insufficient evidence to prove causation, relying on *Elkton*. *Denver & Rio Grande R.R. v. Thompson*, 65 Colo. 4, 7–8, 169 P. 539, 540–41 (1917).

In *Elkton*, we found that mere conjecture cannot substitute for direct or inferential proof of negligence. *Elkton Co. v. Sullivan*, 41 Colo. 241, 249, 92 P. 679, 681 (1907).

8. In *Neal*, we found that there was insufficient evidence to support the judgment, and noted that "[m]ere suspicions and surmises are not evidence." 83 Colo. at 122, 263 P. at 19 (*citing Hukill*).

In *Hukill*, we held that there was no evidence to support the judgment, stating "suspicious [sic] and surmises cannot be made to take the place of evidence." *Hukill v. McGinnis*, 70 Colo. 455, 457, 202 P. 110, 111 (1921).

and *Stull* predated the adoption of the Colorado Rules of Evidence.

In sum, insofar as language in our earlier decisions suggests that expert medical testimony may not be admitted unless such is rendered with "reasonable medical probability or certainty," this standard has been abrogated by the adoption of the Colorado Rules of Evidence. Having confirmed that the Colorado Rules of Evidence govern the admissibility of expert testimony, we apply those standards to the case at hand.

### 2. Modern Standard of Admissibility of Expert Testimony Under the Colorado Rules of Evidence

■ The Colorado Rules of Evidence provide the modern guidelines for the admissibility of expert testimony. *Shreck*, 22 P.3d at 77 (holding that the rules of evidence represent a better standard for determining the admissibility of scientific evidence, as their flexibility is consistent with a liberal approach that considers a wide range of issues). Under CRE 402, all relevant evidence is admissible, except as provided by constitution, rule, or statute, and irrelevant evidence is not admissible. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. CRE 401. While CRE 401 and CRE 402 reflect liberal admission of evidence, CRE 702 and CRE 403 temper that broad admissibility by giving courts discretion to exclude expert testimony if it is unreliable, irrelevant, or "its probative value is substantially outweighed by the danger of unfair prejudice." *Martinez*, 74 P.3d at 322–23 (quoting CRE 403).

CRE 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

See also *Thompson* and *Elkton supra* note 6.

In *Shreck*, we held that scientific evidence is admissible under CRE 702 if the testimony is reliable and relevant. 22 P.3d at 77.

■ To determine reliability, the court considers whether the scientific principles underlying the testimony are reasonably reliable, and whether the expert is qualified to opine on such matters. *Martinez*, 74 P.3d at 321 (citing *Shreck*, 22 P.3d at 77). The court's reliability inquiry under CRE 702 should be broad in nature and consider the totality of the circumstances of each specific case. *Masters*, 58 P.3d at 988 (citing *Shreck*, 22 P.3d at 77).

■ The court of appeals concluded that speculative testimony is not a competent basis for an expert opinion. This conclusion suggests that speculative testimony is not reliable. Thus, before turning to the relevance prong of CRE 702, we first address when expert testimony is "speculative" such that it should not be properly admitted under the reliability prong of CRE 702. Testimony is not speculative simply because an expert's testimony is in the form of an opinion or stated with less than certainty, i.e., "I think" or "it is possible." If such were the case, most expert testimony would not be admissible, as rarely can anything be stated with absolute certainty, even within the realm of scientific evidence. Instead, speculative testimony that would be unreliable and therefore inadmissible under CRE 702 is opinion testimony that has no analytically sound basis. Admissible expert testimony must be grounded in "the methods and procedures of science rather than subjective belief or unsupported speculation." *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 639 (D.Colo.2006) (quoting *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1205 (10th Cir.2002)).[9] The proponent "need not prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community. Instead, the [party] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability re-

**9.** *Gallegos* involved Federal Rule of Evidence 702, which is identical to CRE 702.

quirements." *Id. (quoting Mitchell v. Gencorp, Inc.,* 165 F.3d 778, 781 (10th Cir.1999)). However, a court may reject expert testimony that is connected to existing data only by a bare assertion resting on the authority of the expert. *Id. (citing Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). The danger of this type of speculative testimony, i.e., opinion testimony that has no sound scientific basis, is that what appears to be scientific testimony but is really not may carry more weight with the jury than it deserves. *DePaepe v. Gen. Motors Corp.,* 141 F.3d 715, 720 (7th Cir.1998). Thus, in determining that an expert's testimony is unreliable and should therefore not be admitted under CRE 702, it is not enough for a court to conclude that the testimony is "speculative." Instead, as stated earlier, the court must consider whether the scientific principles underlying the testimony are reasonably reliable, and whether the expert is qualified to opine on such matters. *Martinez,* 74 P.3d at 321 (*citing Shreck,* 22 P.3d at 77). As we stated in *Martinez,* the standard of admissibility under CRE 702 is reliability and relevance, not certainty. *Id.* at 322; *see also Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir.1995) (*quoting Jones v. Otis Elevator Co.,* 861 F.2d 655, 662 (11th Cir.1988)) ("although an expert opinion must be based on 'facts which enable [her] to express a reasonably accurate conclusion as opposed to conjecture or speculation, ... absolute certainty is not required.' ").

■ Having determined that the proffered testimony is reliable, the court must then determine whether the proffered evidence is relevant under the second prong of CRE 702. To determine relevancy under CRE 702, the court should consider whether the expert testimony would be useful to the fact finder. *Shreck,* 22 P.3d at 77 (*citing Brooks v. People,* 975 P.2d 1105, 1114 (Colo. 1999)). Usefulness means that the proffered testimony will assist the fact finder to either understand other evidence or to determine a fact in issue. *Masters,* 58 P.3d at 989 (*citing Lanari v. People,* 827 P.2d 495, 502 (Colo. 1992)). Usefulness thus hinges on whether there is a logical relation between the proffered testimony and the factual issues in-

volved in the case. *Martinez,* 74 P.3d at 323 (*citing In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 743, 745, & n. 13 (3d Cir.1994)). In determining whether the testimony will be helpful to the fact finder, the court should consider the elements of the particular claim, the nature and extent of other evidence in the case, the expertise of the proposed expert witness, the sufficiency and extent of the foundational evidence upon which the expert witness' ultimate opinion is to be based, and the scope and content of the opinion itself. *Masters,* 58 P.3d at 990 (*citing Lanari,* 827 P.2d at 504).

■ Even though the proffered testimony may be admissible under the liberal standards of CRE 702, the court must also apply its discretionary authority under CRE 403 to ensure that the probative value of the evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403; *Masters,* 58 P.3d at 992 (*citing Shreck,* 22 P.3d at 79). Essentially, evidence should be excluded when it has an undue tendency to suggest a decision on an improper basis. *Martinez,* 74 P.3d at 325 (*citing People v. Dist. Court,* 869 P.2d 1281 (Colo.1994)).

■ The court of appeals also implies that failure to state the basis for an opinion may be a factor in determining the admissibility of expert testimony. The court noted Burns did not explain the basis for her conclusion that her examination of AV resulted in a "suspicious" finding. The court then concluded that Burns' testimony addressed only possibilities, and therefore was not a competent basis for an expert opinion. This suggests that the court of appeals considered the lack of basis as another factor supporting its holding that the testimony was inadmissible. However, under CRE 705, an "expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise." Consequently, an expert's failure to state the basis for an opinion does not of itself render the testimo-

ny unreliable or otherwise inadmissible under the Colorado Rules of Evidence. "[T]he expert may in any event be required to disclose the underlying facts or data on cross-examination." CRE 705.

■ Finally, we note the standard of review pertaining to the admissibility of expert testimony is highly deferential. Trial courts are vested with broad discretion to determine the admissibility of expert testimony, and the exercise of that discretion will not be overturned unless manifestly erroneous. *Martinez*, 74 P.3d at 322 (*citing Masters*, 58 P.3d at 988). This deference reflects the superior opportunity of the trial judge to gauge both the competence of the expert and the extent to which his opinion would be helpful to the jury. *Id.*

Having outlined the modern standard of admissibility for expert testimony under the Colorado Rules of Evidence, we now apply it to Burns' testimony.

### 3. Admissibility of Burns' Testimony Under the Colorado Rules of Evidence

■ We start with a determination that Burns' testimony is relevant under the broad standard of CRE 401. Evidence is relevant under CRE 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, Burns' testimony was relevant in the jury's determination as to whether AV was sexually assaulted, a fact that was of key consequence to the determination of the action. AV and his brother testified that AV was sexually assaulted by Ramirez. An emergency room physician testified that AV's perineal-rectal area looked normal at the time of his examination, but that a normal exam did not rule out sexual abuse. The physician also testi-

fied that he used no special instrumentation during the examination. Burns testified that on a four-point scale ranging between "normal" and "definitive," her findings were at the third point of "suspicious," i.e., potentially indicative of sexual abuse. She said the colposcope allows her to see the anus in more detail. She also testified in detail as to why a sexual assault examination that appeared normal would not necessarily rule out sexual abuse. Therefore, Burns' testimony was relevant under CRE 401 in that it supported AV and his brother's testimony on the disputed fact of sexual abuse, tending to make it more probable that sexual abuse had occurred. Burns' testimony was also relevant in explaining to the jury why the emergency physician's examination could have been normal even though sexual abuse may have occurred. Both points of Burns' testimony were relevant to the issue of whether AV was sexually assaulted, a key fact in the trial. Since Burns' testimony was relevant under the liberal standards of CRE 401, it was admissible under CRE 402, which states that relevant evidence is admissible.

We next consider whether Burns' testimony was reliable and relevant under CRE 702. *Shreck*, 22 P.3d at 77. As stated earlier, in determining reliability under CRE 702, the court should consider whether the scientific principles underlying the testimony are reasonably reliable, and whether the expert is qualified to opine on such matters, considering the totality of the circumstances. *Martinez*, 74 P.3d at 321 (*citing Shreck*, 22 P.3d at 77); *Masters*, 58 P.3d at 988 (*citing Shreck*, 22 P.3d at 77). Here, Burns' testimony was based on her examination of AV for signs of sexual abuse. There is no question that a medical examination is a reliable "scientific principle." The only question is whether the four-point scale used by Burns to explain her findings is based on reasonably reliable scientific principles.[10] We find

10. Although Burns described her findings using four labeled categories, each progressively more indicative of sexual abuse, her testimony offered neither statistical, numerical, nor quantifiable conclusions related to her findings. Therefore, we do not require any empirical or methodological justification for Burns' scale. See *People v. Wilkerson*, 114 P.3d 874, 876–78 (Colo. 2005)

(rejecting expert testimony under CRE 702 when the testimony was characterized as being an opinion that an accidental shooting could happen 51% of the time, there was no empirical or methodological justification in the record to support this conclusion, and the expert had not tested the handgun used by the defendant nor

that it is. One would expect to find "normal" and "definitive" at the polar ends of a scale measuring signs of sexual abuse. Burns testified that "definitive" findings include sperm in the anus, immediate dilation of the anus during the exam due to loss of muscle tone, and skin tags outside of the midline of the anus. At a pre-trial hearing, Burns testified that a healing laceration in the anus is a "suspicious" finding, and she found such a laceration here. Although Burns did not list any findings that would fall under the "non-specific" category versus the "suspicious" category, it logically follows that "suspicious," being closer on the scale to "definitive" than "normal," indicates a finding that is more indicative of sexual abuse than a "non-specific" finding, which is closer to "normal" than "definitive" on the scale. We conclude from this testimony that each category of the four-point scale specifically describes findings that are progressively indicative of sexual abuse. Thus, the scale was itself is based on reasonably reliable scientific principles sufficient to satisfy CRE 702. Further, we conclude that placing the specific findings in this case under third category of the four-point scale, the category labeled "suspicious," is based on reasonably reliable scientific principles. We also note that on cross-examination Ramirez could have pursued further information regarding the difference between "non-specific" and "suspicious" findings, but elected not to do so.

We also find that a "suspicious" finding is not speculative such that it should not be properly admitted under the reliability prong of CRE 702. As stated earlier, testimony is not speculative simply because an expert's testimony is in the form of an opinion or stated with less than certainty. Nor is testimony speculative simply because the descriptive term "suspicious" is used to identify a category of findings. Speculative testimony under CRE 702 is opinion testimony that has no analytically sound basis. Although she could not say for certain that AV had been sexually assaulted, Burns' testimony was not based on subjective belief, unsupported speculation, or a bare assertion based on her expertise. Rather, Burns' testimony was

based on her physical examination of AV for signs of sexual assault. Therefore, Burns' testimony that her findings were "suspicious" was not speculative such that it was inadmissible under the reliability prong of CRE 702.

The second part of the reliability prong under CRE 702 was whether Burns was qualified to opine on sexual assault matters. The court of appeals sidestepped this issue, stating that "even if the nurse was properly qualified as an expert," her testimony was not admissible. However, we granted certiorari on a narrow question that did not involve the issue of Burns' qualifications. Further, Ramirez did not argue to this court that Burns was unqualified to testify as an expert. Therefore, we accept the trial court's conclusion that Burns was qualified as an expert to testify on sexual assault matters.

Since we have found the scientific principles underlying Burns' testimony to be reasonably reliable, and have accepted that Burns was qualified to testify as an expert on sexual assault matters, we find her testimony reliable under CRE 702. We turn next to the question of whether Burns' testimony was relevant expert opinion testimony under CRE 702.

To determine relevancy under CRE 702, we consider whether Burns' testimony would be useful to the fact finder. *Shreck*, 22 P.3d at 77 (*citing Brooks*, 975 P.2d at 1114). Usefulness means that the proffered testimony will assist the fact finder to either understand other evidence or to determine a fact in issue. *Masters*, 58 P.3d at 989 (*citing Lanari*, 827 P.2d at 502).

The court of appeals found that a statement of mere possibilities does not rise to the level of evidence and could not have assisted the jury in deciding the outcome. We disagree. Similar to our analysis under CRE 401, we find that Burns' testimony was helpful to the jury. Burns testified that the findings of her physical examination of AV for signs of sexual abuse were "suspicious." As noted earlier, although further explanation of a "suspicious" finding would have been more helpful to the jury, the jury nonetheless could have inferred from this testimo-

pertinent physical characteristics of the defen-

dant related to accidental shootings).

ny that it tended to support the prosecution's allegation that AV was sexually assaulted. The fact that Burns could not definitely state that AV was sexually assaulted did not make her testimony irrelevant. Absent witnessing an assault, it would be difficult for expert testimony in this area to be definitive, as in "I am certain that this child was the victim of sexual abuse" or "I am certain that he was not." Expert testimony is most helpful to the jury when it assists the jury to weigh ambiguous evidence. *See LeMaire v. United States,* 826 F.2d 949, 954 (10th Cir.1987) ("the fact that the expert cannot support his opinion with certainty goes only to its weight not to its admissibility"). Burns' testimony also assisted the jury to understand how AV's testimony could be consistent with the emergency physician's testimony that his examination of AV was normal. Whether AV was sexually assaulted was one of the key factual matters to be determined by the jury. Thus, there was a direct logical relation between the proffered testimony and the factual issues involved in the case. *See Martinez,* 74 P.3d at 323 (*citing Paoli R.R. Yard,* 35 F.3d at 743, 745, & n. 13). Burns' testimony was useful to the jury and therefore relevant under CRE 702.

Burns' lack of explanation regarding the basis for her "suspicious" finding does not undermine our determination that her testimony was helpful to the jury and therefore relevant under CRE 702. Although an explanation of the basis for Burns' conclusion would also have been helpful to the jury, the fact that this information was not provided did not render the information that was provided—the testimony regarding the "suspicious" finding—unhelpful to the jury and therefore irrelevant. Further, under CRE 705, Burns was not required to testify as to the underlying facts or data on which her conclusion was based. We also note that Burns would have been required to disclose the underlying facts or data if defense counsel had chosen to cross-examine her on that issue. CRE 705.

Finally, although we find Burns' testimony to be admissible under CREs 401, 402, 702, and 705, we need to ensure that the probative value of the evidence is not "substantial-

ly outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403; *Masters,* 58 P.3d at 992 (*citing Shreck,* 22 P.3d at 79). We do not find any evidence that would suggest that Burns' testimony was unfairly prejudicial, confusing, misleading, or cumulative, let alone that those matters substantially outweighed the probative value of Burns' testimony.

Thus, we hold that Burns' testimony was properly admitted under the Colorado Rules of Evidence, as it was relevant under CRE 401 and 402, reliable and relevant under CRE 702, and was not substantially outweighed by the concerns of CRE 403.

### B. Jury Instructions

The court of appeals held that on remand, the jury should be instructed that the offense of sexual assault on a child includes a requirement of specific intent that the touching be done for the purposes of sexual arousal, gratification, or abuse. Slip op. at 12. The court of appeals did so in reliance on *Vigil,* 104 P.3d at 268, which we reversed in relevant part in *Vigil,* 127 P.3d 916 ("*Vigil II*"). In *Vigil II,* we held that sexual assault on a child is a general intent crime. 127 P.3d at 931. Thus, the jury instruction given by the trial court in this case that sexual assault on a child requires only a "knowingly" mental state was not in error.

### IV. Conclusion

Burns' expert testimony was properly admitted by the trial court under the Colorado Rules of Evidence. The jury instruction given by the trial court on sexual abuse of a child was correct. Thus, the judgment of the court of appeals is reversed.

Justice EID does not participate.